## STATE v. JAMES DILL.

151 N. W. (2d) 413.

June 2, 1967—No. 40,371.

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

Defendant was convicted of the unlawful possession of a narcotic drug in violation of Minn. St. 618.01, 618.02, and 618.21.[1]

On July 21, 1965, at 2:20 a. m., Minneapolis Narcotics Squad Officers Gaylord G. Gladwin and Walter W. Erickson were in an automobile in north Minneapolis. They observed a 1955 Cadillac leave a drive-in with its lights out. The police followed the lightless car, which was occupied by three passengers, two in the front seat and one in the rear. As they followed the car they observed one of the occupants throw an object out of the right side of the vehicle. The officers stopped, picked up the object, and continued to follow the vehicle. While doing so, they examined the object they had picked up and found in it cigarette papers, commonly used to "roll your own," wrapped in a rubber binder, and a change envelope containing a greenish, finely ground, tobacco-like material which they believed to be marijuana. The Cadillac came to a stop and the three men were identified as Atrice Saunders,

---

[1] Minn. St. 618.01, subd. 14, defines narcotic drugs and includes cannabis. In subd. 23, cannabis is defined as including "all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; * * *." Cannabis Sativa L. as so defined is commonly known as marijuana.

Section 618.02 provides: "Except as authorized by this chapter it shall be unlawful for any person to sell, prescribe, administer, dispense or furnish to a minor, or manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug."

Section 618.21 provides penalties for violation of these provisions.

the driver; George Martin, the front-seat passenger and owner of the car; and defendant, who was in the back seat. The three were then placed under arrest and the policemen proceeded to search the automobile. On the rear window ledge they found a jar cover with a scorched, highly incensed base in it. On the front floor of the vehicle they found the stem of a plant, and in the glove compartment they found a Kleenex with a "highly incensed material" and also a "green flaky substance laying on the bottom of the glove compartment." Defendant denied any knowledge of the package thrown from the Cadillac.

On the afternoon of July 22, 1965, a narcotics squad supervisor saw defendant in the Minneapolis City Jail and asked him if he still had on the clothing he was wearing when arrested. He said he had. He was then asked to remove his outer garments, which he did. The officer placed them in a plastic bag and took them to the Minnesota Bureau of Criminal Apprehension, where they were examined by the laboratory director. Small particles of matter were found in the pockets of the trousers and shirt belonging to defendant which, upon microscopic examination, were found to have the characteristic appearance of marijuana. The substance in the change envelope in the package thrown from the car was found upon examination to be "marijuana, cannabis sativa," as was the stem of the plant recovered from the floor of the automobile and the material found in the Kleenex. Upon this evidence defendant was found guilty of having in his possession a narcotic. He was the sole witness in his own behalf. He testified that he sat in the middle of the back seat of the car; that he did not see anyone throw a package from the car; that he did not have marijuana in his pockets or in his possession; and, further, that he did not know what marijuana was.

Defendant raises several questions on this appeal. He contends that his constitutional rights were violated under the Sixth Amendment because he did not have effective aid and assistance of counsel; that the seizure of his clothing and examination thereof by the Bureau of Criminal Apprehension constituted an illegal search and seizure and that the evidence should have been suppressed; and, finally, that the evidence was insufficient to sustain the verdict.

■ With respect to the first contention of defendant, all that need be said is that he was represented by counsel of his own choosing. While he contends that counsel was not prepared for his trial, this is refuted by the affidavit of counsel. It also appears that the same counsel had represented George Martin, who was tried prior to defendant for the same crime, so he was thoroughly familiar with all aspects of the case. We see no merit to the contention that counsel did not adequately represent him in the trial.

■ With respect to the claim that the evidence does not sustain the conviction, it is clearly evident that if the examination made by the Bureau of Criminal Apprehension of defendant's clothing and the other substances was admissible, the evidence is sufficient to sustain the conviction.

■ We come then to the crucial issue in the case—whether there was an unlawful search and seizure that required the evidence obtained by examining the clothing of defendant to be suppressed. The clothing was obtained from defendant after he had been in custody for about 36 hours. It is the contention of defendant that a search warrant should have been obtained before his clothing was removed from him. He apparently admits that had the search been made immediately following his arrest it would have been a legal search, but contends that, in view of the fact that 36 hours intervened, it was necessary to obtain a search warrant before his clothing could be removed for examination.

Defendant relies on Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777. The state relies on Cooper v. California, 386 U. S. 58, 87 S. Ct. 788, 17 L. ed. (2d) 730. Both cases involve the search of an automobile. The opinion in Preston was unanimous and was written by Mr. Justice Black. The opinion in Cooper was by a divided court, and the court's opinion was likewise by Mr. Justice Black.

In Preston the defendant was arrested for vagrancy, and the car, which was not searched at the time of the arrest, was towed to a garage and later searched by the police officers. Various articles were found in the car which were intended to be used in a bank robbery. In holding that the search and seizure were unlawful, the court said (376 U. S. 367, 84 S. Ct. 883, 11 L. ed. [2d] 780):

"* * * Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U. S. 383, 392 (1914); Agnello v. United States, 269 U. S. 20, 30 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, * * *. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest."

In Cooper, defendant was convicted in a California state court of selling heroin to a police informer. The conviction rested in part on the introduction in evidence of a small piece of brown paper sack seized by the police without a warrant from the glove compartment of an automobile which police, upon defendant's arrest, had impounded and were holding in the police garage. The search occurred a week after the arrest. The court held that the search and seizure were proper, but the decision seems to rest upon the fact that under California law an officer making an arrest for a narcotics violation must seize and deliver to the State Division of Narcotic Enforcement any vehicle used to store, conceal, transport, sell, or facilitate the possession of narcotics, such vehicle "to be held as evidence until a forfeiture has been declared or a release ordered." With respect to the seizure of the automobile, the court said (386 U. S. 61, 87 S. Ct. 791, 17 L. ed. [2d] 733):

"* * * [T]he officers seized petitioner's car because they were required to do so by state law. They seized it because of the crime for which they arrested petitioner. They seized it to impound it and they had to keep it until forfeiture proceedings were concluded. Their subsequent search of the car—whether the State had 'legal title' to it or not—was closely related to the reason petitioner was arrested, the reason his car had been impounded, and the reason it was being retained. * * * It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to

procure a search warrant, but whether the search was reasonable.' United States v. Rabinowitz, 339 U. S. 56, 66, 70 S. Ct. 430, 435, 94 L. Ed. 653."

It is not necessary for us to determine whether Cooper overrules Preston sub silentio as the dissent seems to believe. Nor is it clear what the court's holding would be in a case where an automobile was searched without a warrant after defendant was in custody if it was not required to impound the automobile as evidence. Preston can be distinguished, probably, on the grounds that there defendant was arrested for vagrancy and the search and seizure and the evidence obtained thereby had nothing to do with the crime for which the defendant was in custody. We are convinced that neither of these cases is controlling in the situation now before us.

Probably the most comprehensive examination of the question in this case is to be found in Golliher v. United States (8 Cir.) 362 F. (2d) 594. There, as here, the clothing of a defendant was taken and subjected to scientific tests which disclosed microscopic particles matching particles taken from a bag discovered by officers at the scene of the offense. The court held the evidence so procured was admissible.

In the case before us, the only question of any serious consequence is whether, by waiting 36 hours, the right to remove defendant's clothing for scientific examination without a search warrant had been lost. There are a number of cases holding that clothing may be taken from a defendant after a valid arrest and subjected to scientific examination.[2] In the Golliher case the court said (362 F. [2d] 601):

"* * * Were we to uphold appellants in this case the bloody shirt worn into the police station by the murder suspect would be kept from the eyes of the jury. To us this would be deplorable folly. Therefore,

---

[2] Whalem v. United States, 120 App. D. C. 331, 346 F. (2d) 812; Robinson v. United States, 109 App. D. C. 22, 283 F. (2d) 508; Morton v. United States, 79 App. D. C. 329, 147 F. (2d) 28. See, also, Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. ed. 652, L. R. A. 1915B, 834; Shettel v. United States, 72 App. D. C. 250, 113 F. (2d) 34.

46

we do not propose to initiate a rule that would dictate such a patently unjust result."

We fail to see what could be accomplished by procuring a search warrant in this case. To hold that a defendant could be asked to remove his clothing at the time he is arrested but that his clothing cannot be taken for scientific examination a short time thereafter would lead to an absurd result. A defendant could hardly be expected to disrobe at the time he was arrested. Many cases involve the examination of clothing for blood and for other evidence of a crime. As long as defendant is still wearing the clothes when he is in custody, we fail to see what right of privacy has been invaded by requiring him to remove his clothing at a time when it can be more conveniently done than at the time of the arrest. Here the time lag was not great. Defendant was still wearing the same clothing, and he voluntarily surrendered them upon request, and was provided other clothing, at a time when it could be done without any embarrassment to him. We think that under these circumstances the search and seizure, if it can be designated as such, was reasonable; and that the evidence obtained from a scientific examination of the clothing so procured was admissible in the trial.

Affirmed.