## STATE v. LAWRENCE DUANE McCONOUGHEY.

163 N. W. (2d) 568.

December 13, 1968—No. 41048.

162

*C. Paul Jones*, State Public Defender, and *Robert E. Oliphant*, Assistant State Public Defender, for appellant.

*Douglas M. Head*, Attorney General, *George M. Scott*, County Attorney, and *David C. Weinberg*, Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Frank T. Gallagher, JJ.

Frank T. Gallagher, Justice.

This is an appeal by defendant from a conviction of aggravated robbery.

On November 2, 1966, a drugstore was robbed of a quantity of narcotics by a man described as young and frecklefaced, and wearing a tan rain-and-shine coat. Three days later, on November 5, in the evening, the manager of the Fair Oaks Motel in Minneapolis told police that there was something suspicious going on in one of the rooms. Investigation showed that the room was rented to two known narcotics users; that two sloppily dressed men had arrived at the motel in a car belonging to a known user, had gone into the room, and had left with what appeared to be a doctor's bag; that the occupants had refused room service for 24 hours and when motel personnel were admitted there was vomit on the floor and the occupants "just laid on the bed" and did nothing; that the dirty linen from the room revealed blood spots which a detective from the narcotics squad determined to be typical of those made when a person was blotting spots where narcotics had been injected into the body; that there were similar spots on tissues in the wastebasket along with a handwritten list of several narcotic drugs; and that one of those to whom the room was registered, Carlos Espejo, had come to the office to have 50 1-dollar bills changed into larger denominations.

Based on such information and without obtaining a search or arrest warrant, the narcotics detective, two other officers, and a Federal Bureau of Narcotics agent entered the room and arrested the three men they found in it, one of whom was defendant, for illegal possession of narcotics. The narcotics detective immediately remarked about defendant's being a redhead with freckles. Both the occupants and the room were searched. Needles and syringes were found, as was a tan rain-and-shine coat with the defendant's name on it. No narcotics of any type were found. Espejo was not present when the police entered, and they remained in the room until he returned at about 1:30 a. m., November 6. At that time he was arrested and searched. The search revealed narcotics and a key to a room in a Minneapolis hotel which police discovered was registered to Espejo and defendant. After the police had entered and before Espejo returned, four other men entered the room. All four had narcotics in their possession.

On an affidavit by the narcotics detective, a warrant was issued at 3:45 a. m., authorizing search of the room at the Minneapolis hotel for

narcotics. The search revealed a quantity of narcotics of the same types as those taken from the drugstore, although in some cases the quantities were smaller. The types of narcotics involved are common to any drugstore. The narcotics were subsequently introduced in evidence at the robbery trial.

On November 7, 1966, defendant was placed in a police lineup with eight other men, none of whom had freckles, and was positively identified by a female employee of the drugstore and a customer. The pharmacist who had handed over the narcotics to the robber stated only that the defendant was similar to the robber when taken to defendant's cell to see him. All three witnesses repeated their identifications at the trial. The two who were positive in their identifications had observed the robber for 5 to 15 minutes while he was in the store.

At a Rasmussen hearing, defendant objected to any use of evidence or information obtained in the search of the Fair Oaks Motel or the hotel room, but these objections were overruled. Defendant appeals from the judgment entered pursuant to a verdict finding him guilty of aggravated robbery and asks for a new trial, claiming there was error in the admission of evidence and information obtained in the search of the Fair Oaks Motel, in that there was no probable cause for the arrest incident to which the search was made; and that there was error in admission of the items seized from the hotel room, since the affidavit on which the warrant to search the room was based was fatally defective. Further, defendant contends that even if all the seized evidence was properly admitted, it was not sufficient to sustain the verdict.

As can be seen from this statement of the facts, the state's case against defendant consisted of eyewitness identifications and a quantity of narcotics of the types taken from the drugstore. In his appeal, defendant challenges both types of evidence — the narcotics as illegally obtained, and the identifications as insufficient to sustain the verdict.

■ The test of an arrest without a warrant as set down by this court in State v. Bean, 280 Minn. 35, 41, 157 N. W. (2d) 736, 740, is—

"* * * whether an officer in the particular circumstances, conditioned by his observations and information and guided by all of his

police experiences, could reasonably have believed that a crime had been committed by the person to be arrested."

See, also, State v. Olson, 271 Minn. 50, 56, 135 N. W. (2d) 181, 185; State v. Harris, 265 Minn. 260, 264, 121 N. W. (2d) 327, 330. This is within the constitutional limits as set out by the United States Supreme Court. Brinegar v. United States, 338 U. S. 160, 69 S. Ct. 1302, 93 L. ed. 1879.

Under this test we think that the action of the police in entering the room at the motel must be upheld. Certainly, the traffic of known narcotics users in and out of a room rented to known users, the description of the conditions inside the room, and the distinctive blood spots on the towels and tissues would lead a reasonable and experienced member of the narcotics squad to the conclusion that the persons in the room were in possession of narcotics. While the action of the police in entering the room without first obtaining a warrant is not to be commended or encouraged, State v. Grunau, 273 Minn. 315, 323, 141 N. W. (2d) 815, 822, the test is not the reasonableness or practicality of obtaining a warrant, but the reasonableness of the search or arrest. United States v. Rabinowitz, 339 U. S. 56, 70 S. Ct. 430, 94 L. ed. 653; Hagan v. United States, 124 App. D. C. 276, 364 F. (2d) 669; Mulligan v. United States (8 Cir.) 358 F. (2d) 604.

The arrest of the persons in the motel room being valid, the search of their persons and the area in their immediate control was proper. United States v. Rabinowitz, *supra*; State v. Purdy, 278 Minn. 133, 153 N. W. (2d) 254. While the search produced no narcotics, the discovery of three needles and syringes supported the officers' belief that the room was being used for an illegal purpose and the subsequent arrival of four men with narcotics in their possession confirmed this. Furthermore, the detective from the narcotics squad recognized defendant immediately as fitting the description of a man involved in several drugstore robberies in which narcotics were taken, and the tan rain-and-shine coat with defendant's name in it was of the same type as that worn by the robber.

Had the officers remained in the motel room indefinitely, waiting for anyone who might come there, we would be faced with a serious

question as to the constitutionality of their procedure. However, in this case the officers awaited the return of one of the two men to whom the room was rented, a man known to them to be a narcotics user. There was substantial certainty that this man would return. For the police to have retired to a point from which they could not be observed, leaving an empty room would have increased the chances of the man's being able to escape and of a substantial disturbance in the motel area.

■ Defendant challenges the search of the other man, which resulted in discovery of the key to the room at the hotel. We conclude that defendant lacks standing to make this objection. Most of the cases in this area deal with standing to object to evidence discovered in a search of property, and in that context the rule is that anyone legitimately on the premises when the search occurs has standing to object. Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. (2d) 1247. However, we are dealing here with a search of the other man's person. In the recent case of Sumrall v. United States (10 Cir.) 382 F. (2d) 651, it was held that alleged bank robbers did not have standing to challenge the search of a female companion which resulted in discovery of money identified as some of that taken from the bank. The defendants and the woman were arrested at the same time in the same car and, as here, the woman was not charged or tried with the ones who sought to suppress the evidence. We think that the result in Sumrall is applicable to the present case.

■ Defendant claims that the search of the hotel room was illegal in that the affidavit in support of the search warrant was fatally defective. His claim is based on the fact that the affidavit does not include the source of the description of the holdup men, while assigning the fact that defendant, one of the persons renting the hotel room, matched the description of one of the holdup suspects as a basis for the belief that there were narcotics in the room.

In our approach to questions concerning the sufficiency of affidavits in support of warrants, we are guided by the attitude of the United States Supreme Court. In United States v. Ventresca, 380 U. S. 102, 108, 85 S. Ct. 741, 746, 13 L. ed. (2d) 684, 689, that court stated:

"These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. * * * A grudging or negative attitude by reviewing courts towards warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

Consistent with this policy we stated in our recent decision in State v. Suess, 280 Minn. 308, 312, 159 N. W. (2d) 180, 182:

"* * * Other courts, in considering the question of reasonableness for a search warrant, have expressed the same view to the effect that the test of probable cause is met if the affidavit sets forth competent evidence sufficient to lead a reasonably prudent man to believe that there is a basis for the search."

After examination of the affidavit before us, we conclude that it meets the test we have established and accords with the position of the United States Supreme Court that search warrants be sustained in marginal cases. United States v. Ventresca, *supra*. This is not to say that the constitutional minimum is a standard we encourage. Rather, it is hoped that the police will put forth every effort to make their affidavits as complete as possible so as to leave no doubt concerning the probable cause for the issuance of the warrant, thereby eliminating this as an issue in future cases.

■ Were it not for the recent decisions of the United States Supreme Court concerning police lineup procedures, defendant's contention that the evidence does not support the jury's verdict might be easily dismissed. While it is clear that United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149, and Gilbert v. California, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. (2d) 1178, are not retroactive (Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. [2d] 1199), the identification procedures used may nonetheless be violative of due process. In the instant case the defendant was the only person in the lineup with freckles, and the two witnesses who made positive identification did

so while in each other's presence after viewing the lineup. However, a comparison of the facts of this case with those of Stovall leads us to conclude that the defendant's right to due process was not violated. In Stovall, the sole eyewitness was a victim of a knife attack in which her husband was killed. She identified the defendant when he was brought to her hospital room on the day following major surgery to save her life. At the time of identification the defendant was surrounded by police, was handcuffed, and was the only Negro in the room. In the present case there were two eyewitnesses who had observed the robber in the store for a period of 5 to 15 minutes, during which time they had paid particular attention to him. They identified him in a lineup of nine men, all about the same age and eight of them about the same height. Furthermore, one of the witnesses based her identification on a characteristic walk as well as general appearance.

Inasmuch as defendant's right to due process was not violated by the identification procedure, we conclude that the evidence introduced by the state amply supports the jury's finding of guilty. In light of our disposition of the other issues raised by defendant on this appeal, the judgment entered against him by the trial court must be affirmed.

Affirmed.