## JAMES RUSSELL BROBERG v. STATE.

176 N. W. (2d) 904.

May 1, 1970—No. 41520.

*C. Paul Jones,* State Public Defender, and *Rosalie E. Wahl,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Appeal by James Russell Broberg from a denial of his petition for postconviction relief.

Shortly before 1 a. m. on November 23, 1962, George Tweed, owner of the Wayside Inn, a tavern in Richfield, Minnesota, observed petitioner and two other men in his establishment. Petitioner was wearing a gold sweater and brown pants. Mr. Tweed spoke with petitioner, observed his face from a distance of 2 feet, and "got a real good look at him." The trio left the tavern at about 12:55 a. m.

Meanwhile, less than a block away from the tavern, Mr. and Mrs. John Cameron and their daughter were asleep in their mobile home. At about 1 a. m. they were awakened by a man at their door who claimed to be injured and wished to use their telephone. When Mr. Cameron opened the door the man forged in, followed by petitioner. Petitioner leveled a gun at Mr. Cameron, who told his wife, "Honey, this is a holdup." Petitioner was wearing a gold sweater and "reddish brown pants."

As petitioner held the Camerons at bay with a gun, the other intruder demanded Mrs. Cameron's furs and Mr. Cameron's billfold. The Camerons were able to observe petitioner closely. Mrs. Cameron testified at the trial:

"Q. And do I understand that while he grabbed you with that left hand he did not have anything over his face at that moment?

"A. No, he didn't. I got a good look at his face.

"Q. Was he facing you?

"A. Well, I was down like this (indicating), and when he grabbed me, naturally, I looked up at him and I got a glimpse of his face, a good glimpse of his face.

"Q. And were you able to see it clearly?

"A. Yes. I would—I would have known him anyplace."

As petitioner "man-handled" Mrs. Cameron, the accomplice ransacked the bedroom of the mobile home and returned with a mink coat and a mink stole, worth a combined value of $2,750. Mrs. Cameron testified that petitioner walked out of the mobile home backwards, holding the gun, and stood at the bottom of the stairs with the gun facing them. The intruders were in the mobile home between 10 and 15 minutes. The Richfield police were called at 1:14 a. m.

Upon cross-examination by petitioner's counsel in the trial below, Mrs. Cameron testified that she picked petitioner's photograph out of a "mug book" at the Richfield Police Station. Petitioner's counsel also elicited the following testimony from Mr. Cameron:

"Q. Now, you looked at some pictures with the Richfield Police Department, did you not, Mr. Cameron?

"A. I did.

"Q. How many pictures did you look at?

"A. Well, roughly, there was quite a bunch of them.

"Q. How many?

"A. Well, I didn't count them all. There was approximately a dozen, or better, maybe.

"Q. About a dozen?

"A. Yes.

"Q. Well, did you identify the defendant in those pictures?

"A. Yes, I did.

"Q. On the last picture?

"A. No. It was somewhere around the middle of the thing.

"Q. I see. Did you identify him the first time you looked at the picture?

"A. Yes, I did.

"Q. And it was right about in the middle?

"A. Yeah, somewhere in there. I wasn't counting them.

"Q. Why did you look at all the rest?

"A. Because there were two men in the holdup and I was hoping that the second man would be there."

On December 3, 1962, a lineup was held at the Hennepin County Workhouse, which was witnessed by Mr. and Mrs. Cameron and George Tweed. All three recognized petitioner as the man they saw the early morning of November 23, 1962.

According to petitioner he was the last person in the lineup and the only one not wearing a workhouse uniform. He claims the other persons all were physically dissimilar from him, with not one of them coming within 6 inches of his height or close to his weight. However, there was contradicting testimony at the trial to the effect that there was another participant in the lineup who was approximately the same height as petitioner.

Prior to the lineup petitioner had been serving a sentence in the workhouse for drunk driving. Not until the precise time of the lineup was he told that he was to be a participant therein. Petitioner did not have counsel present at any time during the lineup. He was arrested for robbery as he was leaving the workhouse. The record does not indicate whether the arresting officer had a warrant.

Petitioner was tried and convicted of first-degree robbery pursuant to Minn. St. 1961, §§ 619.41 and 619.42. After pleading guilty to a prior conviction, petitioner was sentenced to the State Prison at Stillwater for a period of 5 to 40 years. The sentence, however, was stayed and petitioner was placed on probation. His probation was later revoked due to violations of its provisions. On May 8, 1968, his petition for postconviction relief was denied. This appeal followed.

The legal issues presented on appeal are: (1) Was the lineup violative of due process? (2) Was petitioner denied the right to effective assistance of counsel? (3) Must petitioner's conviction be reversed on the grounds that there was an illegal search and seizure where no evidence found as a result of a search is introduced at trial? (4) Is the alleged police intimidation of a defense witness material to a robbery trial where that witness does in fact testify at trial? (5) May a defendant object to the legality of his arrest after entering a plea and standing trial?

■ The absence of counsel at the time of the lineup does not merit a reversal of this conviction. The United States Supreme Court ruling in United States v. Wade, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. (2d) 1149, that counsel must be present at the lineup was determined in Stovall v. Denno, 388 U. S. 293, 87 S. Ct. 1967, 18 L. ed. (2d) 1199, to apply only to confrontations occurring after June 12, 1967. Since petitioner's lineup occurred December 3, 1962, he is not entitled to benefit of the Wade requirement.

■ Petitioner contends that independent of the claimed right to counsel he is entitled to relief on the grounds that the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. The standard relied upon by petitioner was established in Stovall v. Denno, *supra,* and reaffirmed in Simmons v. United States, 390 U. S. 377, 88 S. Ct. 967, 19 L. ed. (2d) 1247.

This claim must be considered in the light of the totality of surrounding circumstances. See, Stovall v. Denno, *supra;* Simmons v. United States, *supra.* Evaluating this case on its own facts, we conclude that petitioner's claim fails under that standard.

In the first place, the evidence was conflicting with respect to petitioner's charge that he was 6 inches taller than the other participants in the lineup. The trial court could find no further evidence in support of petitioner's allegation. Furthermore, the court found no evidence other than the variation in wearing apparel which could substantiate a claim of denial of due process. The question of clothing worn by the lineup participants was insignificant, at least with respect to Mrs. Cameron's identification, because she positively and unhesitatingly identified petitioner on the basis of the expression on his face and his build, and not on the basis of his clothing. Further, petitioner was not singled out to speak or perform any particular act, nor "was any accusatorial atmosphere directed in any particular manner

against him at the time of viewing the lineup." State v. Parker, 282 Minn. 343, 359, 164 N. W. (2d) 633, 643.

In the second place, even if we were to conclude that the lineup was tainted, we could not reverse the conviction since the record clearly and convincingly establishes that the in-court identifications had an independent source and were not the product of the lineup. See, United States v. Wade, *supra;* State v. Parker, *supra;* State v. McConoughey, 282 Minn. 161, 163 N. W. (2d) 568. Each witness had ample opportunity to observe petitioner either immediately prior to or during the commission of the crime. Mr. Tweed, the tavern owner, observed petitioner from a distance of 2 feet and "got a real good look at him." Petitioner was in the presence of the Camerons for about 10 or 15 minutes. Mrs. Cameron testified that she "got a good look at his face" and that she "would have known him anyplace." Mr. Cameron also testified that he got a good look at petitioner's face.

■ We conclude that under the circumstances of the present case, although the lineup may have fallen short of the ideal, it was not so " 'impermissibly suggestive' as to give rise to any serious likelihood of misidentification or to result in a denial of due process." State v. Burch, 284 Minn. 300, 314, 170 N. W. (2d) 543, 553. See, also, State v. McConoughey, *supra*. We thus rule that since the lineup in which petitioner was identified did not result in a denial of due process his ensuing arrest based upon such identification was not invalid for lack of probable cause.

■ The other issues raised by petitioner may summarily be disposed of. First of all, petitioner contends that he was denied effective assistance of counsel when his counsel advised him to take the witness stand to testify without warning him that his former convictions could be adduced on cross-examination. The record indicates that on cross-examination the county attorney brought out the fact that petitioner had prior convictions consisting of burglary and a violation of the Dyer Act.

We have repeatedly held that a defendant in a criminal case may not obtain a new trial on the grounds of ineffectiveness or

failure of strategy on the part of counsel unless there be such a strong showing of both incompetence and prejudice as to make the trial a farce or mockery of justice. See, State ex rel. Adams v. Rigg, 252 Minn. 283, 288, 89 N. W. (2d) 898, 903; Adler v. State, 284 Minn. 31, 169 N. W. (2d) 233; State v. Sutton, 277 Minn. 157, 152 N. W. (2d) 57.

In the instant case, upon being asked at the postconviction hearing whether he would have taken the witness stand if he had known that his prior convictions could be elicited, petitioner replied that he believed he would have. Based upon this testimony, we conclude that there could not be a more clear situation of harmless error and lack of prejudice than that presented here.

■ Petitioner raises the issue of his standing to contest the legality of an exploratory search of another's apartment in which he was a resident. However, we can find no prejudice as a result of the search, since petitioner fails to state in what respect he was prejudiced thereby and since none of the evidence seized during the search was introduced at trial.

■ Petitioner also contends that he was denied due process of law when the trial court prevented his counsel from showing the possibility of intimidation of certain prospective witnesses by policemen, resulting in the suppression of evidence. This contention was properly disposed of by the postconviction court when it ruled that no prejudice resulted, since the witness who was supposedly threatened did in fact testify in petitioner's behalf and no harm came to him thereby. Petitioner's allegation that other witnesses were forced not to testify is based on mere conjecture and is insufficient to overturn the trial court's ruling on this issue. See, Swanson v. State, 284 Minn. 66, 169 N. W. (2d) 32.

■ Petitioner raises the question whether a defendant may object to the legality of his arrest after entering a plea and standing trial. This court ruled in State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382, that a defendant must challenge his arrest at or before arraignment or he waives any objection

to the manner in which he was arrested. Clearly, petitioner waived any objection to the court's jurisdiction by appearing in court and entering a plea of not guilty.

This conviction should be and is affirmed.

Affirmed.