## STATE v. MARTYN JEREL BUCHWALD.

196 N. W. 2d 445.

April 7, 1972—No. 42613.

---

*Sherman Bergstein* and *Patricia L. Belois,* for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, and Peterson, JJ. Reconsidered and decided on the record by the court en banc.

PETERSON, JUSTICE.

This is an appeal from a judgment of conviction on two counts of possession of a narcotic drug, one of marijuana and one of hashish. Minn. St. 1969, §§ 618.01, 618.02, and 618.21, subd. 1. The sole issue presented is whether the physical evidence of these substances should have been suppressed as the product of a constitutionally impermissible police search and seizure.

Defendant is the lead singer with a rock music group called the Jefferson Airplane. The musicians performed at the Minneapolis Auditorium on May 15, 1970, and they, together with an entourage including two sound technicians, were housed at the Thunderbird Motel in Bloomington. The events leading to defendant's arrest occurred at the motel in the morning hours of May 16 following the musical performance.

Officer James Hessel and a fellow officer of the Bloomington Police Department, acting on information from another suburban police department that an anonymous parent had reported that his two young teenage daughters had attended an all-night "pot" party in Room 229 of the Thunderbird Motel, observed two adult males escorting two very young girls from the second floor of the motel about 6 a. m. The two males, Terry Cost and Gradon Odell, were sound technicians for the Jefferson Airplane.

As they were placing the two girls in a taxicab, the men were arrested for contributing to the delinquency of minors. Subsequent investigation disclosed that the two men possessed marijuana and cocaine[1] and that the young girls had, at their invitation, attended a party with several persons in "Rooms 221 and 224" and "other rooms," in which marijuana was smoked. The police officers obtained a warrant to search Rooms 221, 224, and 229 (the room stated in the anonymous report to have been the scene of the party), and proceeded to execute the warrant shortly after 10 a. m. on May 16.[2]

At the time other police officers were executing the search warrant for the second-floor rooms of the motel, Officer Hessel commenced an undercover investigation for the presence of young girls[3] or contraband in all rooms listed to the Jefferson Airplane group, including that of defendant on the first floor of the motel. Disguising himself in the casual dress and manner characterized as that of a "hippie," Hessel knocked on defendant's door. Defendant, who was about to go to the motel coffee shop for food, opened the door in response to the knock. Hessel, in pretense, stated that he was supposed to meet Odell there.

---

[1] Cost and Odell were thereafter charged with possession of narcotics, an offense to which they pled their guilt.

[2] The validity of the initial misdemeanor arrest of Cost and Odell and the seizure of their narcotics while they were being transported to police headquarters, the events which later led to the arrest of defendant, are challenged by defendant. Quite apart from the doubtful merit of this constitutional challenge, defendant has no standing to object to an infringement of another person's right. State v. McConoughey, 282 Minn. 161, 163 N. W. 2d 568 (1968); Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. ed. 2d 441 (1963); Alderman v. United States, 394 U. S. 165, 89 S. Ct. 961, 22 L. ed. 2d 176 (1969).

[3] Although unstated in the record, it is apparent that the two young girls with the two technicians were not the same girls reported by the anonymous parent. The girls with them were taken into protective custody and interviewed at police headquarters, so they could not have been home at the prior time of the anonymous parental report to the police; and their ages were different than stated in that report.

Defendant replied that he did not know where Odell was and turned back into the room. Hessel, still standing in the doorway, eyed the room and observed, from a distance of 6 or 7 feet, an open "flip-top" Parliament cigarette box from which 6 hand-rolled cigarettes protruded. It was Hessel's understanding that legitimate hand-rolled cigarettes are not now commonly in use, and in his experience with such cigarettes in some 50 cases during his 3 years' professional experience such cigarettes invariably had been found to contain marijuana. He accordingly concluded that the hand-rolled cigarettes in defendant's possession probably contained marijuana.

Hessel reported these observations to his superior officer, after which defendant was arrested. The cigarettes, which in fact contained marijuana, and some hashish, found in defendant's jacket, were seized and used as evidence in the prosecution of defendant.

The challenge to the validity of the police search and seizure of this physical evidence is two-fold: (1) The observation of Officer Hessel from the doorway into defendant's room, having been obtained by ruse and without probable cause to believe that he had committed an offense, was in its method an unlawful search and invasion of privacy, invalidating the subsequent arrest and search of defendant's person; and (2) regardless of its method, Hessel's observation was not sufficiently accurate and reliable to establish probable cause for the subsequent arrest and the personal search incident to the arrest.

1. We reject defendant's challenge to the method by which Officer Hessel obtained the information leading to the arrest. It is clear that, if the officer did not impermissibly intrude upon defendant's reasonable expectation of privacy and was permissibly positioned outside defendant's open door, his observation was limited to articles in plain sight and did not constitute a search. Harris v. United States, 390 U. S. 234, 236, 88 S. Ct. 992, 993, 19 L. ed. 2d 1067, 1069 (1968); State v. Shevchuk, 291 Minn. 365, 191 N. W. 2d 557 (1971).

Officer Hessel's presence in the hallway of the motel and outside defendant's room clearly was not an impermissible intrusion upon an area under defendant's exclusive control, for defendant's interest in the hallway was shared with other occupants of the premises and, indeed, with police officers properly on the premises in the investigation of offenses understood to have occurred in the motel. As stated in Marullo v. United States, 328 F. 2d 361, 363 (5 Cir. 1964), and quoted with approval in Ponce v. Craven, 409 F. 2d 621, 624 (9 Cir. 1969), certiorari denied sub nom. Ponce v. California, 397 U. S. 1012, 90 S. Ct. 1241, 25 L. ed. 2d 424 (1970):

"A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home."

The observation into defendant's open room by the police officer positioned outside the room was not an invasion of defendant's privacy, for defendant himself opened the door voluntarily. He was not compelled to open it and the voluntariness of his doing so was not the less merely because the unknown knocker was a police officer, in this case a police officer engaged in an appropriate investigation concerning offenses at the motel involving young girls and men associated with the Jefferson Airplane.

Our determination that Hessel's "entry" was with defendant's consent is supported by a like holding in Mann v. Superior Court, 3 Cal. 3d 1, 88 Cal. Rptr. 380, 472 P. 2d 468 (1970). There, an assistant superintendent of schools reported to police that he had reason to believe that there had been marijuana parties at a

stated address where several high school teachers resided and that he understood that there might be such a party there that night, a report which the court considered not to be that of a reliable informant. Investigating police officers noticed several cars parked outside the stated address and they saw people entering the house, from which came sounds of a party in progress. Peeking through a window (concededly accomplished by an impermissible intrusion upon wholly private property), the officers observed narcotics devices and the apparent smoking of marijuana, incident to which one person staggered from the house as though drunk. The police officers thereupon went to the door and knocked loudly, and a male and female voice simultaneously said "Come in." The officers opened the door and were greeted with a strong odor of marijuana smoke. The arrest and admissibilty of evidence seized in the search were sustained. Although the report received from the superintendent gave no probable cause to arrest the occupants, the court concluded that the police officers were fully justified in going to petitioners' house to investigate the report they had received. It preemptorily rejected, as without merit, a contention that the consent to enter was obtained by subterfuge and fraud. And, on the particular point of the open door, the court said (3 Cal. 3d 8, 88 Cal. Rptr. 384, 472 P. 2d 472):

"* * * [T]he only event which induced consent to the officers' entry was the sound of knocking at the door. No words of intimidation or assertion of superior authority accompanied that sound, which might have made consent less than an independent act. Nor did the circumstances lead those present to believe that a refusal to admit the caller would have been futile, and thus overbear their will. For all they knew or apparently cared, they might have been extending their invitation to an unwelcome acquaintance, a curious parent, an irate neighbor, or a thief. Consent was quite freely given, and petitioners cannot now complain that those present did not know their callers were police."

As in Mann, the propriety of Hessel's investigative acts was not vitiated by the police stratagem of disguise and deception. Defendant was not induced to open the door by police stratagem; he obviously did so simply in voluntary response to an unseen person's knock. These cases have a counterpart in Ellison v. United States, 93 App. D. C. 1, 206 F. 2d 476 (1953). There, police investigating a drugstore break-in in which cigarettes and drug products, including narcotics, had been taken, recalled that the defendant had committed a similar drugstore break-in about a year previous and that both drugstores and his home were in the same general area. Surmising that defendant might have committed the second robbery, the officers went to his home and rang the door bell. While waiting for the door to open, they observed articles similar to the kind taken from the drugstore lying on the ground by defendant's home. Rejecting the defendant's contention that the entry on the premises and observation of the articles were an illegal search, the court said (93 App. D. C. 3, 206 F. 2d 478):

"* * * The officers were perfectly entitled to go to appellant's door, ring the bell, and inquire as to his whereabouts. They were not trespassers in so doing. Nor were they guilty of any impropriety in allowing their eyes to wander while they were waiting on the porch. The bottles and cigarettes were not covered or hidden, though it may have been necessary to bend over the porch rail to see them. There was no intrusion into appellant's privacy. Nor did mere observation constitute a 'search.' "

That disguise or deception in police investigation is not in all circumstances violative of the Fourth Amendment has been affirmed by the United States Supreme Court in a trilogy of cases. Hoffa v. United States, 385 U. S. 293, 87 S. Ct. 408, 17 L. ed. 2d 374 (1966); Osborn v. United States, 385 U. S. 323, 87 S. Ct. 429, 17 L. ed. 2d 394 (1966); Lewis v. United States, 385 U. S. 206, 87 S. Ct. 424, 17 L. ed. 2d 312 (1966). See, also, our own decision in State ex rel. Trimble v. Hedman, 291 Minn. 442, 192 N. W.

2d 432 (1971). As Mr. Chief Justice Warren, although dissenting in Hoffa, acknowledged (385 U. S. 315, 87 S. Ct. 420, 17 L. ed. 2d 389):

"* * * There are some situations where the law could not adequately be enforced without the employment of some guile or misrepresentation of identity. * * * It blinks the realities of sophisticated, modern-day criminal activity and legitimate law enforcement practices to argue the contrary."

The plainclothes and the pretense of fraternity of Officer Hessel in the case at bar were clearly no more offensive than those in the Lewis-Hoffa-Osborn cases and more similar, we think, to that sustained in Ponce v. Craven, 409 F. 2d 621 (9 Cir. 1969).

Ponce involved a narcotics investigation by police officers in a motel room, prompted by the motel manager's report of the occupants' suspicious activities, activities which were without doubt more suspicious than in the case at bar. Officers standing in the parking lot outside the room observed conduct and conversation through an open window which revealed the probable presence of narcotics. The manager, at police direction, called the room under the pretext that there was a telephone call (apparently outside the room) for a female occupant. As the woman opened the door to answer the telephone, the officers entered and arrested the occupants. The court held that the observations from the parking lot and through an unshuttered window were neither a search nor an invasion of expected privacy and, most in point here, that the subsequent entry into the room by ruse and without an announcement of official purpose did not invalidate the arrest and search of the occupants.

2. We similarly reject defendant's secondary contention that the police officers lacked probable cause to arrest him and to make the personal search incident to the arrest. The experienced police officer's observation of hand-rolled cigarettes, which today so often contain unlawful marijuana and so seldom contain lawful tobacco, fortified by his actual knowledge that others

among defendant's close associates contemporaneously possessed and used marijuana on the same premises, gave a degree of probability transcending mere suspicion. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," as the United States Supreme Court stated in Hill v. California, 401 U. S. 797, 804, 91 St. Ct. 1106, 1110, 28 L. ed. 2d 484, 490 (1971).[4]

Affirmed.

OTIS, JUSTICE (dissenting).

I would hold that the arrest by Officer Hessel's fellow officers, together with the seizure by them of defendant's marijuana and hashish, was without sufficient probable cause and therefore invalid. I do not consider that the police acted in utter disregard of defendant's constitutional rights. However, we have the advantage of hindsight which was denied them.

Regard for the demands of the Fourth Amendment and the exclusionary rule which it mandates require that all doubts be resolved in favor of the individual citizen. Hence, notwithstanding that defendant's guilt is *now* undoubted, the issue may only be considered in terms of the circumstances *then* existing. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. 2d 1081, 84 A. L. R. 2d 933 (1961); State v. Bryant, 287 Minn. 205, 177 N. W. 2d 800 (1970).

The only evidence that defendant possessed marijuana was the box of hand-rolled cigarettes observed by Officer Hessel upon his first encounter with defendant. This observation was from a position several feet away. The officer was standing in the hallway outside defendant's room. Hessel neither saw nor smelled

---

[4] We do not by reference to defendant's association with others of the musical group intimate that mere association of a person with others known to commit narcotics offenses would, without more, raise any rational inference of guilt, Sibron v. New York, 392 U. S. 40, 62, 88 S. Ct. 1889, 1902, 20 L. ed. 2d 917, 934 (1968), nor do we remotely indicate that defendant's presumed life style or occupation as a rock musician raises even a reasonable suspicion of unlawful conduct.

the contents of the cigarettes. It is significant that the arresting officer confirmed the nature of the material in them only by breaking open a cigarette. I have in mind that Hessel testified that in each of some 50 cases during his 3 years of professional experience subsequent analysis had "always" shown hand-rolled cigarettes to contain marijuana. His colleague, Officer Paul Pederson, testified that it was so in "most" cases he had investigated. However, the police department of which they are members distributes a pamphlet to parents advising them of the obvious fact that not every hand-rolled cigarette contains marijuana. Suspected cigarettes in possession of their own children may be merely homemade tobacco cigarettes. Whether or not, as these officers indicated, young people in the community do not commonly smoke hand-rolled tobacco cigarettes, it was hardly within the competence of the police officers to assume that out-of-state visitors to the motel do not do so. Although the cited authorities support the initiation of this general investigation, the stated facts upon which they were decided give no support to an arrest and search under circumstances as ambiguous as these.

The totality of the circumstances leading to the investigation does not elevate the officers' understandable suspicion to the level of probable cause. The general conduct of defendant had been quiet and unobtrusive, with no suggestion of furtive or secretive activity. Cf. State v. Dill, 277 Minn. 40, 151 N. W. 2d 413 (1967). The mere fact that defendant was a member of the Jefferson Airplane, some of whose members or associates occupying rooms on another floor were known to have possessed and smoked marijuana, created no reasonable inference that defendant was implicated in that criminal activity. His presumed bohemian attributes would not warrant so adverse an inference of unlawful behavior any more than his occupation as a rock musician would. Although his disguise as a person of like mind and habits afforded Officer Hessel the opportunity to visit with defendant in the coffee shop, there is no indication in this record

defendant intimated he had participated in the marijuana smoking which had occurred on the second floor.[1] Rather than suggesting an association with Odell, for whom Officer Hessel pretended to be searching, the evidence indicated that defendant had no present knowledge of Odell's whereabouts.

We are reminded by Sibron v. New York, 392 U. S. 40, 62, 88 S. Ct. 1889, 1902, 20 L. ed. 2d 917, 934 (1968), that not even the association of one in conversation with known narcotics addicts during a period of 8 hours will raise such a reasonable inference of criminal culpability as to support an intrusion by the police upon an individual's personal security.

I would reverse.

MR. JUSTICE TODD, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

---

[1] It is not wholly without significance that the police officers had undertaken to arm themselves with a search warrant with respect to rooms of persons in the Jefferson Airplane entourage on the second floor of the motel but, lacking any like evidence of probable cause from any source, anonymous or disclosed, with respect to defendant and his room on the first floor, had not undertaken to include his room in the premises to be searched.