323 So.2d 449 (1975)
STATE of Louisiana
v.
Percy HINES and James Murray.
No. 56721.
Supreme Court of Louisiana.
December 8, 1975.
Arthur A. Lemann, III, Supervising Atty., New Orleans, Paul Wilkins, Student Practitioner, Loyola Law School Clinic, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Percy Hines and James Murray, charged with possession of herion with intent to distribute, were tried jointly and found guilty of possession of heroin, a violation of LSA-R.S. 40:966B(1). The court sentenced each to imprisonment for eight years in the custody of the Louisiana Department of Corrections. On appeal, defendants rely upon one bill of exceptions for reversal of their convictions and sentences.
Defendants contend that the trial court erred in overruling their motion to suppress the heroin, alleging that the police officers seized the evidence in an unconstitutional search of a private residence.
The circumstances surrounding the seizure of the heroin are crucial. Police Officers Farmer and Chetta received information from a confidential source, just before noon on November 6, 1972, that "Jake and Percy" were selling heroin from the side door of an apartment complex at the uptown-river corner of Dryades and Clio Streets. The informant had not given the officers the exact street address where the activity was taking place; therefore, the officers drove to the location to investigate the report and to gather enough information to enable them to obtain a search warrant. *450 They drove past the site and saw two men in the yard near the rear entrance of 1200, 1202, 1204, 1206 Dryades Street, a fourplex apartment house located at the corner of Dryades and Clio. They recognized one of the individuals as Jake Glover, an ex-convict well known to Farmer and strongly suspected by him of distributing narcotics. To avoid alerting the participants, the officers drove on, returning to the location a few minutes later. At this time, they got out of their car and stepped into the yard to inspect the building. Jake's companion walked past them, and the officers stopped him for identification purposes. He showed them a driver's license, identifying him as Percy Hines, and, in response to the officer's question, stated that he lived in the apartment building.
The officers left the premises. About a block away, at the corner of Clio and Baronne Streets, they saw Jake Glover leaving a barroom, and Glover, who normally greeted Farmer, averted his face, hurried away, and appeared to be holding something. The officers suspected that Glover might be carrying some type of contraband, so they began investigating on foot. Farmer watched Glover walk along Clio Street and turn left when he reached the apartment building. Officer Chetta, from another vantage point, saw Glover go through the front door at 1206 Dryades. Both officers went into the rear yard of the apartment complex. Although there was a low fence around the common yard, there was no enclosing gate. The building itself was open: either there was no door to the common hallway or the door was completely open. The officers saw three men, Hines, Glover, and Murray, standing together inside the hallway, examining the contents of a paper bag that Hines was holding in his right hand. When the three saw the officers, they ran, Hines dropping the paper bag on the floor as he fled. Officer Farmer caught Glover, while his partner captured Hines and Murray. Officer Farmer picked up the paper bag. He asked the three men if the bag belonged to any of them, and all replied, "No." Officer Farmer then looked into the bag and found three foil packets. Upon opening the packets, he found small envelopes of brownish-white powder, which he believed to be heroin. The three men were formally arrested. The officers took $135 from Hines in small bills and $59 from Glover, also in small bills.
Defendants contend that the officers had no right to stop Percy Hines, question him, and ask him for identification in the rear yard of the apartment complex, and that Jake Glover's suspicious behavior when he saw Officer Farmer and his partner at the corner of Baronne and Clio did not authorize the police to again enter the rear yard and then the hallway of the apartment complex, and that for these reasons the paper bag containing the heroin was seized in violation of the Fourth Amendment of the United States Constitution.
The uncontradicted evidence establishes that the common yard of the apartment complex had no gate; that, consequently, the entrance to the yard was open; that the hallway either had no door or the door was open, so that the officers standing in the common yard saw the defendants clustered around the paper bag; that the three suspects saw the police and fled the scene, Hines dropping the bag; and that, upon being intercepted by the police, the three men denied ownership of the bag lying on the floor of the hallway.
It is well settled that the Fourth Amendment to the United States Constitution protects people, not places. It is the individual's reasonable expectation of privacy that our society values and the constitution protects. Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
Neither the apartment dwellers nor others could have had a reasonable expectation of privacy in the common yard open to the public. Hence, the officers violated no constitutional rights by entering the *451 yard. See State v. Nine, La., 315 So.2d 667 (1975); United States v. St. Clair, 240 F.Supp. 338 (D.C.N.Y.1965); Marullo v. United States, 328 F.2d 361 (5th Cir. 1964); United States v. Miguel, 2 Cir., 340 F.2d 812, cert. denied 382 U.S. 859, 86 S. Ct. 116, 15 L.Ed.2d 97 (1965); State v. Buchwald, 293 Minn. 74, 196 N.W.2d 445 (1972).
While they were legally on the premises, the officers saw the defendants drop the paper bag in the hallway and flee. At this point, they clearly had probable cause to arrest the defendants. LSA-C. Cr.P. Art. 213; Johnson v. Middlebrooks, 383 F.2d 386 (5th Cir. 1967). Upon apprehending them, the officers took possession of the paper bag, abandoned on the floor.
We hold, as did the trial judge, that the officers gained possession of the heroin in a manner consistent with constitutional safeguards. Hence, it was properly admitted in evidence at the trial.
For the reasons assigned, the conviction and sentence are affirmed.