STATE of Minnesota, Appellant,

v.

Michael William PATRICELLI,
Respondent.

No. 82–684.

Supreme Court of Minnesota.

Sept. 14, 1982.

Warren Spannaus, Atty. Gen., Norman B. Coleman, Jr. and Kenneth W. Saffold, Sp. Asst. Attys. Gen., St. Paul, James R. Clifford, County Atty., Center City, for appellant.

C. Paul Jones, Public Defender and Mollie G. Raskind, Deputy State Public Defender, Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is a pretrial appeal by the state pursuant to Minn.R.Crim.P. 29.03 from an order of the district court suppressing evidence in the prosecution of defendant on a charge of aggravated robbery. The district court suppressed the evidence, a statement, on the ground that it was the fruit of an illegal arrest of defendant at the house of a friend. Specifically, the court ruled (a) that although police had a warrant, the warrant was defective (b) that absent a valid warrant the arrest was unlawful under *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) and (c) that the confession was the suppressible fruit of the arrest. We hold that the arrest was lawful even without a warrant and therefore we reverse and remand for trial.

On January 27, 1982, an investigator for the Chisago County Sheriff's Office presented a completed standard complaint form to a magistrate. The standard form, in this case Form C of the Mandatory Forms, has boxes at the top for the affiant to check whether he is seeking a summons, warrant, or order of detention, and also boxes for indicating whether the offense charged is a felony or a gross misdemeanor. The investigator had checked the box for warrant and the box for felony. In the affidavit part of the form, he swore to facts establishing probable cause to believe that defendant was guilty of the aggravated robbery of a combination gas station and store on November 14, 1981. The investiga-

tor signed the form in the presence of the magistrate.

The magistrate found probable cause and signed the bottom of Form J of the Mandatory Forms. That form is a multiple purpose form which can be used as a summons, warrant, or order of detention, depending on which box is checked. The magistrate neglected to check any of the boxes but did sign the form.

That afternoon the investigator and two other officers went to the residence of defendant's girlfriend in Mahtomedi believing that defendant was there. (Defendant's residence was in St. Paul.) The investigator and one of the officers, who was in his uniform, knocked on the door of the vestibule or windowless porch, then entered the vestibule as an older man opened the inner door to the private quarters. The investigator asked for defendant, who was seated at a table in open view. The older man turned and asked if defendant was there, and defendant then came to the door to talk with the investigator. At that point defendant was told he was under arrest.

Later that day the investigator obtained a search warrant to search defendant's residence in St. Paul and that warrant was executed.

Subsequently, early on January 28, defendant made a statement. It is that statement which the district court suppressed.

The district court concluded that the magistrate's failure to check one of the boxes meant that he had, for whatever reason, decided not to issue a summons, warrant, or detention order and that therefore there was no warrant. He ruled that without a valid warrant the arrest was invalid because the arrest occurred in a dwelling. Finally, he concluded that the illegality of the arrest tainted the statement defendant gave.

In *State v. Miller,* 316 N.W.2d 23 (Minn. 1982), we dealt with the issue of what is an entry under the United States Supreme Court's decision in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that, absent exigent circumstances or consent, police without an arrest warrant may not cross the threshold and enter a suspect's residence to arrest him. In *Miller* we discussed, without deciding, the issue whether nonexigent warrantless arrests initiated at the threshold may be valid, stating:

Another issue left undecided in *Payton* is what effect *Payton* has on cases which, relying on *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), uphold nonexigent warrantless arrests initiated at the threshold when a suspect voluntarily opens the door. In the *Santana* case police, who had probable cause to believe that Santana had in her possession marked money which had been used to make a heroin buy arranged by an undercover agent, went to her house, where they saw her standing in the open doorway holding a paper bag. After shouting "police" and displaying their badges, they approached but Santana retreated into the vestibule. The officers followed through the open door, catching and arresting her in the vestibule, seizing the bag, which contained heroin, and the marked money from her pockets. Reversing a decision of the Court of Appeals which upheld a district court ruling which suppressed the evidence, the United States Supreme Court, citing *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976)— which upheld the nonexigent warrantless arrest of an individual in a public place upon probable cause—concluded that Santana was in a "public" place when she stood in the open doorway of her house:

While it may be true that under the common law of property the threshold of one's dwelling is "private," as is the yard surrounding the house, it is nonetheless clear that under the cases interpreting the Fourth Amendment Santana was in a "public" place. She was not in an area where she had an expectation of privacy. "What a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S.

347, 351 [88 S.Ct. 507, 511, 19 L.Ed.2d 576] (1967). She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house. *Hester v. United States,* 265 U.S. 57, 59 [, 44 S.Ct. 445, 446, 68 L.Ed.2d 898] (1924). Thus, when the police, who concededly had probable cause to do so, sought to arrest her, they merely intended to perform a function which we approved in *Watson.* 427 U.S. at 42–43, 96 S.Ct. 820 at 36, 37, 416 L.Ed.2d 598.

Concluding that Santana could not defeat the arrest, which had been set in motion in a public place, by retreating into a private place, the Court reversed the judgment of the Court of Appeals.

One lower court case which relied upon *Santana* and upheld a nonexigent warrantless arrest initiated at the threshold when a suspect voluntarily opened the door to police knocking was *United States v. Botero,* 589 F.2d 430, (9th Cir. 1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). The same court that decided *Botero*—a court which adopted a *Payton*-type rule in advance of the *Payton* holding—suggested in *United States v. Johnson,* 626 F.2d 753 (9th Cir. 1980), *cert. granted,* 454 U.S. 1028, 102 S.Ct. 563, 70 L.Ed.2d 472 (1981), that *Santana* and *Botero* still have vitality. The court in *Johnson* seemed to be of the view that nonexigent warrantless arrests initiated at the threshold may be valid but only if the suspect's initial act of exposing himself to the view and physical control of the police by opening his door is consensual, as by voluntarily opening the door when he knows that the police are knocking, not when the police use deception or subterfuge to get him to open the door.

We believe that the United States Supreme Court will uphold nonexigent warrantless arrests initiated at the threshold of a suspect's house where the suspect voluntarily opens the door in response to knocking.

Whether or not the use of deception and disguise should be ruled out in the *Payton* context and whether or not it is deceptive for a plainclothes policeman to knock on the door of a suspect's house are issues which the United States Supreme Court will also ultimately have to decide. Any decision approving the use of deception and disguise would probably rely on *Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966)—the so-called *Hoffa* trilogy—which approved the use of deception in police investigation under certain circumstances. [Footnote omitted] This trio of cases was relied upon by this court in *State v. Buchwald,* 293 Minn. 74, 196 N.W.2d 445 (1972), which upheld the use of a ruse by police to get a man whom they suspected of having contributed to the delinquency of minor girls to open the door to his hotel room. On the other hand, there are strong arguments which can be made against the use of deception by police. *See for example,* Weinreb, *Generalities of the Fourth Amendment,* 42 U.Chi.L.Rev. 47, 66–67 (1974).

In this case a plainclothes officer went to the door and knocked, and defendant opened the door. Whether this constitutes deception on the part of the police and, if so, whether that rendered illegal any warrantless arrest of defendant initiated at the threshold are issues which we have concluded need not be decided at this time * * *.

316 N.W.2d at 29.

Thereafter, the United States Supreme Court affirmed the decision of the Court of Appeals in *Johnson,* which we discussed in *Miller,* but only on the issue of whether *Payton* is retroactive. *United States v. Johnson,* —— U.S. ——, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982). In its opinion holding *Payton* retroactive, the Supreme Court explicitly stated that it was expressing no opinion on the correctness of the Court of Appeal's ruling that, if applied to

the facts, *Payton* would require a holding that the arrest was illegal. Professor La-Fave's view is that the circuit court in *Johnson* erred in holding that police may not use deception in order to obtain defendant's presence at the threshold. 2 W. La-Fave, Search and Seizure § 6.1, n. 61.5 (Supp.1982). However, we need not decide the matter in this case because it is clear that the police did not need to have a warrant to knock on the door of the house in question, *State v. Prudhomme,* 287 N.W.2d 386 (Minn.1979), and did not use any deception in obtaining defendant's presence at the open door. Therefore, we conclude that the police did not enter the house.

■ Because of our holding that the warrantless arrest of defendant at the threshold was valid, we need not decide other issues presented by the appeal. Specifically, we do not decide (a) whether the magistrate's failure to check the box for warrants was a mere clerical mistake that can be corrected by postarrest amendment;[1] (b) whether a person arrested at another person's dwelling has standing to complain about a warrantless entry;[2] and whether, if the arrest was unlawful, the statement was the fruit of the illegality.[3]

Reversed and remanded for trial.

COYNE, J., took no part in the consideration or decision of this case.

---

1. The general rule is that a piece of paper is not an arrest warrant if it fails to direct the arrest of a person. 22 C.J.S., Criminal Law § 323(a) (1961). The district court ruled that the omission of the check on the box was not a mere clerical error that could be corrected under Minn.R.Crim.P. 3.04, subd. 1, by a postarrest amendment and ruled also that the fact that the warrant box had been checked on Form C by the investigator was not sufficient to convert the paper the magistrate signed into a warrant. Cases which could have a bearing on the decision of this issue include *Sternberg v. Superior Court,* 41 Cal.App.3d 281, 115 Cal.Rptr. 893 (1974), and *State v. Mathison,* 263 N.W.2d 61 (Minn.1978).

2. If the residence was not defendant's home for fourth amendment purposes, then police would have had to obtain a search warrant to enter the house. Recently, in *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court held that the evidence discovered in the warrantless search of Steagald's home had to be suppressed *in the prosecution of Steagald* because, although the police had an arrest warrant for one Lyons and therefore could have entered Lyons' house without a search warrant, the house searched was not Lyons' house but Steagald's house and a search warrant was needed to search for Lyons in Steagald's house. In this case if one were to conclude that the police entered the house in question, then one would have to say that the police should have obtained a search warrant; however, as a practical matter, if it was not defendant's house for fourth amendment purposes, then *arguably* only the girl friend and her parents would have standing to complain about the entry, not defendant.

3. In *State v. Miller,* 316 N.W.2d 23 (Minn.1982), the defendant contended that his confession was inadmissible on the ground that his warrantless arrest at his girlfriend's house violated *Payton.* In avoiding the issue whether police had used deception to obtain defendant's presence at the threshold and whether that rendered illegal the warrantless arrest, we remanded for a reopening of the omnibus hearing to determine if the confession was the fruit of a valid search of defendant's apartment rather than defendant's arrest at the girlfriend's house. We stated:

> Our examination of the record of the omnibus hearing and the transcript of defendant's confession fails to reveal whether the police told defendant that they had searched the apartment before they questioned him. If they did, then it is likely that defendant's knowledge of the results of the lawful search of his apartment and not any illegality in arresting him without a warrant caused him to confess.

316 N.W.2d at 30–31.

In this case it is not clear whether police obtained any evidence in the warranted search of the defendant's residence in St. Paul, which occurred after defendant was arrested but before he was questioned, but it is possible that there was evidence discovered in the search which aided the police in obtaining a statement from defendant. Police also had other strong evidence unconnected with the arrest which may have been useful in persuading defendant to give a statement.