Louis D. PONCE, Appellant,

v.

Walter E. CRAVEN, Warden, Appellee.

No. 22551.

United States Court of Appeals
Ninth Circuit.

March 11, 1969.

Rehearing Denied May 14, 1969.

Louis D. Ponce, for appellant.

Thomas C. Lynch, Atty. Gen., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge.

This is an appeal from an order of the district court dismissing a petition for a writ of habeas corpus by a State prisoner. No evidentiary hearing was held. We affirm.

Louis Ponce was tried and convicted by a judge without a jury in a California state court for the illegal possession of heroin. Cal.Health & Safety Code, § 11500.5. On November 24, 1964, Ponce was sentenced to the term prescribed by law.[1]

Ponce exhausted his State remedies. His conviction was affirmed by the State Court of Appeal on June 20, 1966, in an unpublished opinion. Petition for hearing by the State Supreme Court was denied and petition for certiorari to the U. S. Supreme Court was denied. 386 U.S. 1026, 87 S.Ct. 1377, 18 L.Ed.2d 470 (1967).

## THE FACTS

Late in the evening of July 30, 1964, Officers Reed and Lockhart of the Southgate Police Department Narcotic Detail, responded to a telephone call from the woman manager of the Fulton Motel. When they arrived they were told by the manager of the suspicious activities of a guest [Ponce]: (1) he changed $2 or $3 into dimes every day from her for use in making telephone calls; (2) he rarely slept; (3) he left the motel at all hours; (4) he kept his blinds pulled at all times; (5) he refused to allow the maid to enter his room to change the linen and insisted upon doing it himself; (6) on one occasion the manager was called to his room by his woman companion to check the television set and that while there the manager saw several uninflated balloons on the set; the manager told the police that no children were in the room at the time; (7) a beautician, living in the same motel had refused to enter the guest's room after being invited and later told the manager that "Those people are loaded;" (8) she observed that the tenant made frequent trips to Ensenada and Tijuana; and (9) on more than one occasion she had seen a car park across the street from the motel and one of its occupants run from the car to the window of unit 12, where the suspicious man was staying, and receive a package passed out through the window. The officers had never previously used the manager as an informant.

The manager then took the officers to the rear of unit 12; the bathroom window was open sufficiently to allow the officers to look inside and to overhear conversations taking place within the motel room. The area directly behind the motel unit 12 was used for parking by guests and persons having business at the Fulton Motel.

While standing in this parking area for three to five minutes, Officer Reed overheard a conversation from within, between a man and a woman. The exchange was partly in English and partly in Spanish. Although he could not understand Spanish, Officer Reed did recognize the word *carga*—a Spanish slang expression for heroin. He also overheard the male voice say, "How many quarters is that?" Officer Reed testified that in narcotics jargon *quarters* refers to quarter ounces. Officer Reed also heard the sound of snapping rubber. He testified that this was significant since "balloons, finger stubs and condoms are a common method of packing * * * heroin and the snapping of the rubber indicates narcotics are being packaged in the room."

Since he did not speak Spanish and wished to determine the exact nature of the conversation within unit 12, Officer Reed called Police Sergeant Salisbury to the scene. Although Salisbury was not a narcotics specialist, he understood Spanish. Officer Salisbury was directed to the bathroom window in the rear of unit 12. He went there and returned to Officer Reed. Salisbury reported that he had observed a man in the bathroom washing out a hypodermic needle.

Salisbury's observations, in addition to the motel manager's statements and his own observations, led Reed to conclude

---

1. We have examined the clerk's transcript and reporter's transcript of appellant Ponce's trial and sentencing in California Superior Court. We have permitted the record in this appeal to be augmented with copies of each document.

that he had at least probable cause to make an arrest for possession of narcotic paraphernalia. He testified that at the time he also "felt" that illegal narcotics were to be found in the room.

Officer Reed then directed police headquarters to telephone the Fulton Motel. In addition to ringing in the manager's quarters, a bell outside also rings when a telephone call is made to the motel. The manager answered the ring and then walked to the door of unit 12. According to a plan agreed upon with Officer Reed and the other police then present, the manager announced that the telephone call was for the woman, Connie Godoy, who was occupying the room with Ponce. When Miss Godoy opened the door, the police immediately entered the room and arrested her and Ponce. The arresting officers did not announce their identity as policemen nor their purpose before entering the room.

After handcuffing Ponce, Officer Reed told him that he was going to be advised of his constitutional rights. Ponce answered, "I know my rights; I know I am entitled to an attorney, and anything I say can be used against me."

The officers then searched the room and found eleven rubber contraceptives, each containing approximately one-quarter ounce of powdered heroin mixed with milk sugar. Two needles and other narcotic paraphernalia were also found. After the search Reed asked Ponce whether there was "any more stuff" to be found. Ponce answered "No, there is no more stuff; you got it all * * * What are you going to do with the broad?" Officer Reed answered that he was going to charge Miss Godoy with possession and possession for sale. Ponce said, "Why don't you cut her loose? That stuff is mine."

## QUESTIONS PRESENTED

Ponce contends in his habeas corpus petition, and in his appeal to this court, that he was denied due process of law by the State of California. He specifically attacks: (1) the bath room window surveillance carried on by the police; (2) the manner in which the police gained entry to his motel room; (3) his warrant-less arrest; (4) the use of his admissions to Office Reed; and (5) the admission of evidence seized during the search of his room.

(1) *Police observation of appellant's bathroom window.*

■■■■ The Fourth Amendment's protections against unreasonable searches and seizures are applicable against state law enforcement officers through the Fourteenth Amendment in the same measure as against federal officers. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The occupant of a motel room is entitled to the same protections as the owner of a house against unreasonable searches and seizures. *See,* Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). However, the very nature of motel residency distinguishes the scope of that protection from that possessed by a person in his own house. As the court stated in Marullo v. United States, 328 F.2d 361, 363 (5 Cir. 1964):

> "A private home is quite different from a place of business or from a motel cabin. A home owner or tenant has the exclusive enjoyment of his home, his garage, his barn or other buildings, and also the area under his home. But a transient occupant of a motel must share corridors, sidewalks, yards, and trees with the other occupants. Granted that a tenant has standing to protect the room he occupies, there is nevertheless an element of public or shared property in motel surroundings that is entirely lacking in the enjoyment of one's home."

In this case police officers made their observations of Ponce's bathroom window from the motel parking lot, which was for the use of guests and persons having business at the motel. The parking lot was an area to which many people had access; it was an area to which the appellant, as an occupant of the motel, had only shared property.

The Supreme Court has recently held in Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968):

> "It has long been settled that objects falling in the plain view of an officer *who has a right to be in the position to have that view* are subject to seizure and may be introduced in evidence." (emphasis added).

This court has previously applied this same rule to a case where police officers made observations of a suspect in his dwelling place, which gave rise to probable cause for his arrest. Polk v. United States, 291 F.2d 230, 232 (9 Cir. 1961), and following a hearing on remand, 314 F.2d 837, 838 (9 Cir. 1963). *See also*, Safarik v. United States, 62 F.2d 892, 895 (8 Cir. 1933).[2]

In this case the police officers were lawfully in the parking lot of the motel, and merely observed what was within their plain view while standing there. However, this court must also determine whether the looking and listening carried on was "an intrusion upon what the resident seeks to preserve as private." Wattenburg v. United States, 388 F.2d 853, 857 (9 Cir. 1968); Cf., Katz v. United States, 389 U.S. 347, 351–352, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); and Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

If a person knowingly exposes his activities to public view and hearing, he is not entitled to have these activities protected against searches and seizures. Katz v. United States, 389 U.S. at 351, 88 S.Ct. 507. Further, if a person relies upon privacy in a given situation, that reliance must be reasonable and justified under the particular circumstances. Katz

v. United States, 389 U.S. at 361, 88 S.Ct. 507 (Harlan, J.) (concurring opinion).

■ Ponce's reliance on privacy in his motel room was not reasonable under the circumstances. If he did not wish to be observed, he could have drawn his blinds. The officers did not intrude upon any reasonable expectation of privacy in this case by observing with their eyes the activities visible through the window. *See* United States v. Lee, 274 U.S. 559, 563, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); *cf.*, Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476, 478 (1953); People v. Martin, 45 Cal.2d 755, 762, 290 P.2d 855 (1955); People v. Wright, 41 Ill.2d 170, 242 N.E.2d 180, 184 (1968). Nor was there any unreasonable intrusion upon privacy when the officers overheard conversation from inside the motel room. As the court said in United States v. Llanes, 398 F.2d 880, 884 (2 Cir. 1968):

> "We believe that conversations carried on in a tone of voice quite audible to a person standing outside the home are conversations knowingly exposed to the public."

We agree; the conversation between Ponce and his woman companion was lawfully overheard by Officer Reed and admitted into evidence. *Cf.* Hunter v. United States, 339 F.2d 425, 426 (9 Cir. 1964).

(2) and (3) *The police entry and arrest of appellant.*

■ The lawfulness of an arrest by state authorities for a state offense must be tested by resorting to applicable state law so long as it is not violative of the protections set forth in the Federal Constitution. Ker v. California, 374 U.S. 23, 37, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

2. In other cases where police observed events with their unaided senses, the admissibility of testimony as to what was perceived, depended upon where the officer was when the observations were made. Texas v. Gonzales, 388 F.2d 145 (5 Cir. 1968); California v. Hurst, 325 F.2d 891 (9 Cir. 1963), reversed on other grounds, 381 U.S. 760, 85 S.Ct. 1796, 14 L.Ed.2d 713 (1965) (per curiam); Whitley v. United States, 99 U.S.App.D.C. 159, 237 F.2d 787, 788 (1956); Brock v. United States, 223 F.2d 681, 685 (5 Cir. 1955).

■ In California a law enforcement officer may arrest without first securing a warrant whenever the officer has reasonable cause to believe that the person to be arrested has committed a public offense in his presence. Cal.Pen.Code, § 836 (West Cum.Supp.1968). While observing the motel unit, Officer Salisbury saw appellant Ponce wash out a hypodermic needle in the bathroom sink. In California, it is unlawful "to possess any device, contrivance, instrument or paraphernalia used for unlawfully injecting a restricted dangerous drug." Cal.Health & Safety Code, § 11915 (West Supp. 1968). Following this observation, the officers outside unit 12 did have "reasonable cause" as required by § 836 and probable cause as required by the Fourth Amendment to believe a public offense was being committed in their presence. *See,* Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Therefore, they could lawfully arrest Ponce without first securing a warrant.

Ponce contends that since the officers employed a ruse to gain admittance, and did not announce their purpose before entering, the subsequent arrest and search were unconstitutional. California Penal Code, section 844 provides:

"To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

It is this statute which appellant contends the police violated.

■ It is clear from the language of section 844 that only if police resort to a breaking must they announce their purpose. The employment of a ruse which results in the occupant of a dwelling voluntarily opening the door and thereby allowing officers to enter without announcement of purpose, is not a breaking and, therefore, not violative of California arrest law. The California Court of Appeal held that the police entry in this case was not unlawful merely because a ruse was employed. People v. Ponce, Crim. No. 10651 (Ct. of App. 2d Dist., filed June 20, 1966) (unpublished).

People v. Quilon, 245 Cal.App.2d 624, 628, 54 Cal.Rptr. 294, 298, (1966) states the rule:

"[C]onstitutionally proscribed trickery is that in which an officer obtains entry by subterfuge to a place where he has no right to be. Stratagem in itself is not illegal; it may be used, for example, to gain entry in order to effect a lawful arrest."

*See also,* People v. Coleman, 263 A.C.A. 805, 812, 69 Cal.Rptr. 910 (1968) ; People v. Hamilton, 257 Cal.App.2d 296, 302, 64 Cal.Rptr. 578 (1967) ; People v. Brooks, 234 Cal.App.2d 662, 679, 44 Cal.Rptr. 661 (1965) ; People v. Scott, 170 Cal.App. 2d 446, 452, 339 P.2d 162 (1959) ; People v. Lawrence, 149 Cal.App.2d 435, 446, 308 P.2d 821 (1957).

The same rule has been applied in interpreting the analogous federal statute, 18 U.S.C. § 3109, without running afoul of the Fourth Amendment. Dickey v. United States, 332 F.2d 773, 778 (9 Cir. 1964), cert. denied 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1964) ; Leahy v. United States, 272 F.2d 487, 489 (9 Cir. 1959), cert. dismissed 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).

The manner in which the police entered Ponce's motel room and his subsequent arrest are not violative of California law or the United States Constitution.

*(4). The Admissions.*

Appellant's trial began November 4, 1964, and he was sentenced November 24, 1964. In determining whether his statements to Officer Reed were admissible in evidence we must refer to Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and the stricter California standard of People v. Dorado, 62 Cal.2d 338, 42 Cal.Rptr. 169, 398 P.2d 361 (1965). Johnson v. New Jersey, 384 U.S. 719, 733, 86 S.Ct. 1772,

**627**

16 L.Ed.2d 882 [permitting stricter state standards], 734 [Escobedo prospective only from date of decision—June 22, 1964] (1966); In re Lopez, 62 Cal.2d 368, 372, 42 Cal.Rptr. 188, 398 P.2d 380 (1965) [*Escobedo* and *Dorado* applied to Calif. cases in which as of June 22, 1964, the conviction had not become final].

Officer Reed testified that his first conversation with Ponce after arresting him went as follows:

"[T]he defendant was seated on the bed and I had a conversation with him. I told him that I was going to advise him of his constitutional rights and he said, 'I know my rights; I know I am entitled to an attorney, and anything I say can be used against me.'"

The facts show that Ponce knew his rights and effectively waived them; therefore, his statements were properly admitted in evidence against him. Escobedo v. Illinois, 378 U.S. 478, 490 n. 14, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); People v. Dorado, 62 Cal.2d 338, 352–354, 42 Cal.Rptr. 169, 398 P.2d 361 (1965). *See also*, Johnson v. New Jersey, 384 U.S. 719, 733–734, 86 S.Ct. 1772, 16 L.Ed. 2d 882 (1966) [the specific holding of *Escobedo*].

(5) *The search incident to arrest.*

A warrantless search of premises under the suspect's control incident to a lawful arrest does not violate constitutional safeguards, *see*, Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), as long as it is not unreasonable in scope. *See*, United States v. Rabinowitz, 339 U.S. 56, 60–63, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

The search conducted in our case lasted about one and a half hours in Ponce's one room motel unit. Its scope and duration were not such as to render it unreasonable. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

In addition to the narcotics paraphernalia, containers filled with heroin were also found; their introduction into evidence is not barred. Items of contraband by their very nature relate to criminal behavior, so are therefore subject to seizure in the course of lawful search. Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

The judgment of the district court is Affirmed.