STATE OF CONNECTICUT *v.* LEONARD R. BENTON
(4250)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued November 6, 1986—decision released February 24, 1987

*John R. Williams,* with whom, on the brief, was *Sue L. Wise,* for the appellant (defendant).

*C. Robert Satti, Jr.,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

DUPONT, C. J. The primary issue in this appeal is whether the failure to suppress statements overheard, without the use of any aural enhancement device, by a police officer stationed in an apartment adjacent to that of the defendant constituted a violation of the defendant's rights under the fourth amendment to the United States constitution.[1] The precise facts of the

---

[1] The defendant's written motion to suppress and his supplemental motion to suppress rely on his fourth amendment rights under the United States constitution. At the hearings conducted by the trial court, the defendant likewise relied solely upon that constitutional protection. As the defend-

case have not served as the background for a holding in any case, either federal or state, of which this court or the parties are aware.

The defendant entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a, to a number of drug related charges after the trial court denied his supplemental motion to suppress.[2] His sole claim on appeal is that the court erred in not granting the motion. The motion was directed to evidence gathered by an electronic wiretapping and a subsequent search of the defendant's apartment, both of which were conducted pursuant to warrants.

The affidavit attached to the wiretap application recited statements made by the defendant or other persons in his apartment. Those statements were overheard by a detective investigating the defendant's alleged criminal activities. At the time these statements were overheard, the detective was in the apartment adjacent to that of the defendant, with the permission of the resident of that apartment. While listening to the defendant's statement, the detective moved between rooms in the apartment he was in, remaining between one and three feet from the wall between the apartments, and did not use any type of electronic or sensory enhancing listening device.

In order for the defendant to succeed in his claim that the trial court erred in not suppressing the evidence

ant did not then raise the claim which he now asserts under article first, § 7, of the Connecticut constitution, and has failed to bring this claim under the principles of *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), we will not now review the state constitutional claim.

[2] The defendant was charged with possession of cocaine with intent to sell or dispense, in violation of General Statutes § 21a-277 (a); possession of cocaine, in violation of General Statutes § 21a-279 (a); possession of marihuana with intent to sell or dispense, in violation of General Statutes § 21a-277 (b); possession of over four ounces of marihuana, in violation of General Statutes § 21a-279 (b); and possession of drug paraphernalia in a drug factory situation, in violation of General Statutes § 21a-277 (c).

gathered pursuant to the search warrant issued in partial reliance upon evidence gathered by the wiretap, he must demonstrate that the overhearing of those statements, which were later relied on in the wiretap warrant and which led to the issuance of the search warrant, constituted a search in violation of the defendant's rights under the fourth amendment to the United States constitution. In determining whether a search was conducted by the police, we must undertake a two-pronged inquiry, and determine, first, whether the defendant manifested a subjective expectation of privacy with regard to these statements and to that place from which the statements were gathered, and, second, whether society is prepared to recognize that subjective expectation as reasonable. *Katz* v. *United States,* 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring).

Our threshold inquiry is whether the defendant had a reasonable expectation of privacy in statements made in his apartment which could be overheard by a person in the adjacent apartment. With regard to the defendant's subjective expectation of privacy, we recognize that "[t]he very fact that a person is in his own home raises a reasonable inference that he intends to have privacy, and if that inference is borne out by his actions, society is prepared to recognize his privacy." *United States* v. *Taborda,* 635 F.2d 131, 138 (2d Cir. 1980). In this case, the defendant's apartment was his home for the purpose of his seeking privacy and the protection of the fourth amendment. *Miller* v. *United States,* 357 U.S. 301, 307, 78 S. Ct. 1190, 2 L. Ed. 2d 1332 (1958). The record presents us with no evidence demonstrating that the defendant's actions fail to support the inference that he intended to have his privacy within the confines of his own home.

We must now examine whether his expectation of privacy in conversations carried on within his own home

is reasonable in this case. "What a person knowingly exposes to the public, even in his home, is not a subject of Fourth Amendment protection." *Katz* v. *United States,* supra, 351; *State* v. *Zindros,* 189 Conn. 228, 238–39, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

There have been a multiplicity of fourth amendment eavesdropping cases decided in this nation. See *United States* v. *Mankani,* 738 F.2d 538 (2d Cir. 1984); *United States* v. *Ortega,* 471 F.2d 1350 (2d Cir. 1972), cert. denied, 411 U.S. 948, 93 S. Ct. 1924, 36 L. Ed. 2d 409 (1973); *United States* v. *Llanes,* 398 F.2d 880 (2d Cir. 1968), cert. denied, 393 U.S. 1032, 89 S. Ct. 647, 21 L. Ed. 2d 576 (1969). It has widely been recognized, in cases involving apartments and hotel or motel rooms, that the technologically unaided or unenhanced overhearing of statements does not constitute a search under the fourth amendment. This view has been consistently upheld regardless of whether the eavesdropper was positioned in a common hallway of an apartment building, motel or hotel, or in an adjoining motel or hotel room. These cases do not hinge upon the single fact that the defendant is within the confines of his dwelling, but rather rely for their determination upon the conjunction of various facts, including especially the lack of sensory enhancement, the fact that the eavesdropping government agent was lawfully in position to overhear the statements, and that the presence of a person in that place could reasonably be anticipated. See *United States* v. *Mankani,* supra, 542–43; *United States* v. *Agapito,* 620 F.2d 324, 329–32 (2d Cir. 1980); *United States* v. *Hall,* 488 F.2d 193, 198 (9th Cir. 1973).

In this case, the eavesdropper neither secreted himself within the defendant's home, nor used any sensory enhancing devices. See *Lopez* v. *United States,* 373 U.S. 427, 465, 83 S. Ct. 1381, 10 L. Ed. 2d 472, reh. denied,

375 U.S. 870, 84 S. Ct. 26, 11 L. Ed. 2d 99 (1963) (Brennan, J., dissenting). The police officer here was allowed by the adjacent apartment dweller to enter and remain in his apartment during the time when the statements complained of were overheard. It is clear that the officer had a legal right to be in that position at that time. See *State* v. *Brown,* 198 Conn. 348, 357, 503 A.2d 566 (1986).

The risk of being overheard by an eavesdropper has long been recognized in the development of our fourth amendment jurisprudence. *Berger* v. *United States,* 388 U.S. 41, 87 S. Ct. 1873, 18 L. Ed. 2d 1040 (1966); *United States* v. *Martin,* 509 F.2d 1211 (9th Cir.), cert. denied, 421 U.S. 967, 95 S. Ct. 1958, 44 L. Ed. 2d 455 (1975). " 'The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak.' " *Hoffa* v. *United States,* 385 U.S. 293, 303, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966), reh. denied, 386 U.S. 940, 87 S. Ct. 970, 17 L. Ed. 2d 880 (1967), quoting from the dissent of Justice Brennan in *Lopez* v. *United States,* 465, supra. Indeed, in this case, the defendant admitted at the suppression hearing that he could hear conversations occurring in that apartment in which the officer positioned himself to overhear the defendant's statements. Furthermore, the occupant of the adjacent apartment had complained to the police about noise emanating from the defendant's apartment prior to the date on which the statements had been overheard.

To hold, as we do here, that statements overheard, without the use of anything but the human ear, by a police officer lawfully stationed in an apartment adjoining that of a defendant, can be used as support for an application for a wiretap without a violation of the fourth amendment to the United States constitution,

is but a slight extension of the holdings in other cases. The same result was obtained in cases involving adjoining hotel and motel rooms; *United States* v. *Mankani,* supra; *United States* v. *Agapito,* supra; *United States* v. *Fisch,* 474 F.2d 1071 (9th Cir.), cert. denied, 412 U.S. 921, 93 S. Ct. 2742, 37 L. Ed. 2d 148 (1973); and in a case involving a hallway outside the defendant's apartment; *United States* v. *Llanes,* supra. Apartment houses share many of the same features as motels. Both have shared corridors, stairs, sidewalks, yards and common walls between contiguous areas. Statements made in an apartment in a tone of voice audible to persons in adjacent apartments are the functional equivalent of statements knowingly exposed to the public. See *United States* v. *Llanes,* supra, 884; *State* v. *Zindros,* supra, 238–39.

The defendant further argues that even if the statements overheard were properly a part of the affidavit and wiretap application, the evidence gathered should have been suppressed due to the lack of reliable facts to establish probable cause in the application for the wiretap. His argument in this respect relies upon the characterization of the overheard statements as "ambiguous snippets of unrelated conversations."[3] These statements were overheard in the context of an ongoing investigation into the defendant's alleged activities as a dealer of illicit narcotics. In the context of such an extensive investigation, encompassing information gathered both by local police and the United States drug enforcement agency, which implicated the defendant in an ongoing criminal enterprise, it can hardly be said that the overheard statements were

---

[3] The following words and phrases were overheard in the course of the aural surveillance, and were recited in the wiretap application: "coke"; "rock"; "expecting a package"; "would have to trust him for the other five until Sunday"; "the whole package now"; "It's good stuff"; "Yeah, it looks good."

"ambiguous snippets" in relation to the illegal activity of the defendant. A sensible reading of the whole application for the wiretap warrant, including these statements, establishes a substantial basis in support of the finding of probable cause in the wiretap application. *State* v. *Ross,* 194 Conn. 447, 459, 481 A.2d 730 (1984); *State* v. *Williams,* 169 Conn. 322, 326, 363 A.2d 72 (1975). The evidence seized pursuant to the search warrant, which relied in part on the evidence gathered by the wiretap, need not be suppressed.

There is no error.

In this opinion the other judges concurred.