## STATE OF CONNECTICUT *v.* LEONARD R. BENTON (13159)

PETERS, C. J., HEALEY, SHEA, CALLAHAN and GLASS, Js.

Argued November 12, 1987—decision released January 26, 1988

*John R. Williams,* with whom, on the brief, was *Sue L. Wise,* for the appellant (defendant).

*C. Robert Satti, Jr.,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in an information with four counts of violating the state dependency producing drug law[1] and one count of possession

---

[1] General Statutes (Rev. to 1983) § 21a-277 provides in pertinent part: "(Formerly Sec. 19-480). PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance, other than marihuana, or a narcotic substance except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than three thousand dollars or be both fined and imprisoned and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than five thousand dollars, or be both fined and imprisoned.

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with intent to sell or dispense, possesses with intent to sell or dispense, offers, gives or administers to another person any controlled substance, except a hallucinogenic substance other than marihuana, or a narcotic substance except as authorized in this chapter, may, for the first offense, be fined not more than one thousand dollars or be imprisoned not more than seven years or be both fined and imprisoned; and, for each subsequent offense, may be fined not more than five thousand dollars or be imprisoned not more than fifteen years, or be both fined and imprisoned."

General Statutes § 21a-279 provides in pertinent part: "(Formerly Sec. 19-481). PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be

of drug paraphernalia in a drug factory situation.[2] After the trial court denied his supplemental motion to suppress evidence, the defendant entered nolo contendere pleas to all counts of the information under General Statutes § 54-94a.[3] In doing so, he reserved his right to appeal the trial court's denial of his supplemental motion to suppress. The trial court entered findings of guilty on all counts and sentenced the defendant to an effective term of ten years imprisonment.

The defendant appealed to the Appellate Court, claiming that the trial court erred in failing to suppress evidence that had been gathered as a result of a wiretap

---

both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years, or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years, or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned.

"(b) Any person who possesses or has under his control any quantity of a hallucinogenic substance other than marihuana or four ounces or more of a cannabis-type substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than five years or be fined not more than two thousand dollars or be both fined and imprisoned, and for a subsequent offense may be imprisoned not more than ten years, or be fined not more than five thousand dollars or be both fined and imprisoned."

[2] General Statutes § 21a-277 (c) provides: "No person shall knowingly possess drug paraphernalia in a drug factory situation as defined by [subsection] (20) of section 21a-240 for the unlawful mixing, compounding or otherwise preparing any controlled substance for purposes of violation of this chapter."

[3] "[General Statutes] Sec. 54-94a. CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

on his telephones and a subsequent search of his apartment by the police. The wiretap had been authorized by an order of the wiretap panel. General Statutes § 54-41d. The search had been conducted pursuant to a subsequently issued search warrant. General Statutes § 54-33a.

On his appeal to the Appellate Court, the defendant's principal claim was that the affidavit in support of the state's application to the wiretap panel contained references to conversations that emanated from his apartment in a two family duplex house located at 200 Westfield Avenue in Bridgeport. Those conversations, he argued, were illegally overheard by an eavesdropping police officer in violation of the defendant's rights under the fourth amendment to the United States constitution. He contended, therefore, that they could not be cited in the affidavit and that, without those conversations, there was insufficient probable cause to justify the issuance of the wiretap order. Information gathered as a result of the wiretap was later used as a principal component of probable cause in an affidavit employed to obtain the search warrant for the defendant's apartment. The defendant argued that any evidence that had resulted from the wiretap and the search warrant should have been suppressed as "fruit of the poisonous tree." *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

The Appellate Court disagreed with the claim that there had been an illegal search, ruling that the conversations in question had not been overheard in violation of the fourth amendment. *State* v. *Benton,* 10 Conn. App. 7, 12–13, 521 A.2d 204 (1987). It held that the trial court, consequently, did not err when it denied the defendant's supplemental motion to suppress. On petition, we granted certification limited *solely* to the following question: "Were the defendant's rights under the fourth amendment to the United States constitu-

tion violated by [the trial court's] failure to suppress statements overheard without the use of any aural enhancement device, by a police officer stationed in an apartment adjacent to that of the defendant?" We agree with the reasoning and result reached by the Appellate Court and will comment further only briefly.[4]

The conversations in question were overheard by a detective who was assisting in an investigation of the defendant's alleged participation in illegal narcotics activity. On the evening of January 6, 1984, at the time he overheard the conversations, the detective was in the apartment adjacent to that of the defendant for the specific purpose of maintaining a surveillance of the defendant. It is unquestioned that he was there with the express permission of the tenant of that adjacent apartment. While there, intermittently, over a period of some three hours, from a distance not closer than twelve to eighteen inches to the common wall dividing the two apartments,[5] the detective overheard incriminating conversations. It is undisputed that the detective did not employ electronic aids or sensory enhancing devices of any kind and that the conversations were heard with the "naked ear."

The general rule is that what a government agent perceives with his or her unaided senses, when lawfully present in a place where he or she has a right to be, is not an illegal search under the fourth amendment. *United States* v. *Mankani,* 738 F.2d 538, 543 (2d Cir.

---

[4] The defendant also claimed in the Appellate Court that even if the conversations had not been obtained in violation of the fourth amendment and were properly included in the affidavit to obtain the wiretap order, the wiretap panel still had insufficient reliable information to justify the issuance of its order. The Appellate Court rejected this claim and our grant of certification did not include this issue.

[5] The trial court and the Appellate Court noted the distance as between one and three feet. The state and the defendant, however, appear to agree that the police officer testified that the distance was twelve to eighteen inches.

1984); *United States* v. *Wheeler,* 641 F.2d 1321, 1324 (9th Cir. 1981); *United States* v. *Agapito,* 620 F.2d 324, 330–31 (2d Cir.), cert. denied, 449 U.S. 834, 101 S. Ct. 107, 66 L. Ed. 2d 40 (1980); *United States* v. *Jackson,* 588 F.2d 1046, 1053, reh. denied, 591 F.2d 1343 (5th Cir.), cert. denied, 442 U.S. 941, 99 S. Ct. 2882, 61 L. Ed. 2d 310 (1979); *United States* v. *Ortega,* 471 F.2d 1350, 1361 (2d Cir. 1972), cert. denied, 411 U.S. 948, 93 S. Ct. 1924, 36 L. Ed. 2d 409 (1973); W. LaFave, Search and Seizure (2d Ed.) § 2.2 (a), p. 326, and § 2.3 (b), p. 390.

Since *Katz* v. *United States,* 389 U.S. 347, 351, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), it is clear that "the Fourth Amendment protects people, not places." The protection that the fourth amendment affords "people," however, generally requires a reference to "place" to determine what degree of privacy can be expected and whether that expectation is one society is prepared to recognize as reasonable. *United States* v. *Mankani,* supra, 542; *United States* v. *Taborda,* 635 F.2d 131, 137–38 (2d Cir. 1980); *United States* v. *Agapito,* supra, 331; *United States* v. *Jackson,* supra, 1052; *United States* v. *Fisch,* 474 F.2d 1071, 1078 (9th Cir.), cert. denied, 412 U.S. 921, 93 S. Ct. 2742, 37 L. Ed. 2d 148 (1973).

Persons, such as the defendant, residing in an apartment, or persons staying in a hotel or motel have the same fourth amendment rights to protection from *unreasonable* searches and seizures and the same *reasonable* expectation of privacy as do the residents of any dwelling. *United States* v. *Mankani,* supra, 544; *United States* v. *Jackson,* supra; *Ponce* v. *Craven,* 409 F.2d 621, 624 (9th Cir. 1969), cert. denied sub nom. *Ponce* v. *California,* 397 U.S. 1012, 90 S. Ct. 1241, 25 L. Ed. 2d 424 (1970). That right honors the justifiable expectation that if their conversations are conducted in a manner undetectable outside their room or resi-

dence by the electronically unaided ear they will not be intercepted. *United States* v. *Burns,* 624 F.2d 95, 100 (10th Cir.), cert. denied sub nom. *Reynolds* v. *United States,* 449 U.S. 954, 101 S. Ct. 361, 66 L. Ed. 2d 219 (1980). The shared atmosphere and the nearness of one's neighbors in a hotel or motel or apartment in a multiple family dwelling, however, diminish the degree of privacy that one can reasonably expect or that society is prepared to recognize as reasonable. *United States* v. *Mankani,* supra; *United States* v. *Agapito,* supra; *United States* v. *Jackson,* supra. The occupant of any such facility who speaks in tones discernible to a neighbor or to a neighbor's invitee who may be expected to be only inches away on the other side of a common wall does not have an objectively reasonable expectation that what is said will not fall on alien ears. *United States* v. *Wheeler,* supra, 1325; *United States* v. *Burns,* supra; *United States* v. *Jackson,* supra.

Conversations carried on in any type of residence, or anywhere for that matter, in a tone audible to the unaided ear of a person located in a place where that person has a right to be, and where a person can be expected to be, are conversations knowingly exposed to the public. *United States* v. *Muckenthaler,* 584 F.2d 240, 245 (8th Cir. 1978); *United States* v. *Martin,* 509 F.2d 1211, 1214 (9th Cir.), cert. denied, 421 U.S. 967, 95 S. Ct. 1958, 44 L. Ed. 2d 455 (1975); *Ponce* v. *Craven,* supra, 625; *United States* v. *Llanes,* 398 F.2d 880, 884 (2d Cir. 1968), cert. denied, 393 U.S. 1032, 89 S. Ct. 647, 21 L. Ed. 2d 576 (1969); see W. LaFave, supra, § 2.3 (c), p. 392. Conversations knowingly exposed to the public are not within the penumbra of fourth amendment protection. *Katz* v. *United States,* supra, 351; *United States* v. *Burns,* supra; *United States* v. *Muckenthaler,* supra. The type of dwelling is inconsequential except insofar as its physical attributes increase the vulnerability of its occupants to eavesdropping by the unaided ear. See *United States* v. *Jackson,* supra.

The simple fact is that we "do not live in a vacuum." *United States* v. *Mankani,* supra, 542. One who is insensitive to his surroundings and indiscriminate in his conversation bears the risk of being overheard by an eavesdropper. *United States* v. *Taborda,* supra, 137–38; *United States* v. *Jackson,* supra, 1054; *United States* v. *Llanes,* supra. " 'It is the kind of risk we necessarily assume whenever we speak.' " *Hoffa* v. *United States,* 385 U.S. 293, 303, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966), reh. denied, 386 U.S. 940, 87 S. Ct. 970, 17 L. Ed. 2d 880 (1967), quoting *Lopez* v. *United States,* 373 U.S. 427, 465, 83 S. Ct. 1381, 10 L. Ed. 2d 462 (1963) (Brennan, J., dissenting). "Eavesdropping from a place where [an] officer has a right to be is a long-accepted technique of crime detection, not outlawed by the Fourth Amendment. If Katz had talked loud enough to be overheard his expectation of privacy would be gone." *United States* v. *Martin,* supra, 1214.

The defendant believes that a different rule should apply to multiple family dwellings in general and duplex apartments in particular. We find it difficult to quarrel with the overwhelming weight of authority which we think dictates a different result.

The judgment of the Appellate Court is affirmed.

In this opinion PETERS, C. J., SHEA and GLASS, Js., concurred.

ARTHUR H. HEALEY, J., concurring. I agree with the result reached and with most of the rationale for reaching this result. I write separately only to articulate briefly my view on some broad language used in the majority opinion that is sweeping with reference to the right and reasonable expectation of privacy.

In this case, the defendant, despite the fact that the statement involved was made in his own home and not in a transitory housing arrangement such as a hotel

or motel, "talked loud enough to be overheard [so that] his expectation of privacy [was] gone." *United States* v. *Martin,* 509 F.2d 1211, 1214 (9th Cir.), cert. denied, 421 U.S. 967, 95 S. Ct. 1958, 44 L. Ed. 2d 455 (1975). As the majority notes, "[o]ne who is insensitive to his surroundings and indiscriminate in his conversation bears the risk of being overheard by an eavesdropper," so circumstanced as was the police eavesdropper in this case. The facts of this case justify the result reached.

I do not agree with the majority when it says that "[p]ersons, such as the defendant, residing in an apartment, or persons staying in a hotel or motel have the same fourth amendment rights to protection from *unreasonable* searches and seizures and the same *reasonable* expectation of privacy as do the residents of any dwelling." (Emphasis in original.) Other language in the opinion implies that such a grouping, i.e., hotel, motel or apartment, is constitutionally valid without any distinction as to whether it is transitory or permanent. Indeed, "it is the fact that hotels, as opposed to residences, are truly transitory places." *United States* v. *Mankani,* 738 F.2d 538, 544 (2d Cir. 1984). But as *Mankani* points out: "[I]t is the transitory nature of such places [hotels and motels], commonly understood as such, that diminishes a person's justifiable expectation of privacy in them." Id. That the threshold for determining what is a reasonable expectation of privacy is higher, in the first instance, where one resides and where his "effects" are than in "truly transitory places" such as hotels or motels, is illustrated by precedent. For example, "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection"; *United States* v. *Martinez-Fuerte,* 428 U.S. 543, 561, 96 S. Ct. 3074, 49 L. Ed. 2d 1116 (1976); and the fourth amendment "was intended to protect against invasions of 'the sanctity of a man's home and the privacies of life.' *Boyd* v.

*United States,* 116 U.S. 616, 630 [6 S. Ct. 524, 29 L. Ed. 746 (1886)]." *Warden* v. *Hayden,* 387 U.S. 294, 301, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967).

It is not wholly correct then to say, or intimate, that the defendant, a resident in an apartment (actually "a duplex apartment in a side-by-side two-family house" in Bridgeport), or persons staying in a hotel or motel have the same reasonable expectation of privacy under the fourth amendment as "do the residents of any dwelling." In *United States* v. *Jackson,* 588 F.2d 1046, 1053, reh. denied, 591 F.2d 1343 (5th Cir.), cert. denied, 422 U.S. 941, 99 S. Ct. 2882, 61 L. Ed. 2d 310 (1979), cited by the majority, for example, the court said that "despite the fact that an individual's Fourth Amendment rights do not evaporate when he rents a motel room, the extent of the privacy he is entitled to reasonably expect may very well diminish." Then again, "one's reasonable expectation of privacy in the home is entitled to a unique sensitivity from federal courts." *United States* v. *Reed,* 572 F.2d 412, 422 (2d Cir. 1978). In *United States* v. *Agapito,* 620 F.2d 324, 331 (2d Cir.), cert. denied, 449 U.S. 834, 101 S. Ct. 107, 66 L. Ed. 2d 40 (1980), also cited by the majority, the court acknowledges that "the reasonable expectation of privacy in a hotel room differs from those in a residence." Because of these recognized constitutional distinctions we should carefully factor the formulation set out in Justice Harlan's concurring opinion[1] in *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), into the "clear" statement, cited by the

---

[1] As Judge Newman notes in his dissent in *United States* v. *Holland,* 755 F.2d 253, 258 n.2 (2d Cir. 1985), "[t]he reasoning of Justice Harlan's concurrence has been widely followed. See, e.g., *Oliver* v. *United States,* 466 U.S. 170, 104 S. Ct. 1735, 1740, 80 L. Ed. 2d 214 (1984); *Illinois* v. *Andreas,* 463 U.S. 765, 103 S. Ct. 3319, 3323, 77 L. Ed. 2d 1003 (1983); *United States* v. *Santana,* 427 U.S. 38, 42, 96 S. Ct. 2406, 2409, 49 L. Ed. 2d 300 (1976); *United States* v. *Reed,* 572 F.2d 412, 422 (2d Cir.), cert. denied, 439 U.S. 913, 99 S. Ct. 283, 58 L. Ed. 2d 259 (1978)."

majority, that the fourth amendment protects persons and not "places." Justice Harlan stated in *Katz* that what privacy interest of persons society is prepared to regard as reasonable often requires reference to a "place." Id., 361. This, I suggest, has not been sufficiently stressed by the majority.

Nevertheless, I agree with the result reached. The eavesdropping officer overheard the defendant with his naked ear in a place where he was legally situated. Therefore, the defendant had effectively surrendered his fourth amendment rights.