[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
On September 22, 1998, the defendant, Scott Schofield filed a Motion to Suppress Evidence, pursuant to Connecticut Practice Book § 41-12 et seq., specifically narcotics and drug paraphernalia seized as a result of a search made in connection with his arrest for a violation of a protective order. The defendant was also charged with possession of narcotics, in violation of Connecticut General Statutes § 21a-279(a) and use of drug paraphernalia, in violation of Connecticut General Statutes § 21a-267(a).
Pursuant to Connecticut Practice Book § 41-7, the Court makes CT Page 12085 the following findings of fact:
On June 11, 1998, the New Haven Police Department received a telephone call from Kristen Bellonio. Ms. Bellonio reported that she was receiving harassing telephone calls from the defendant, her ex-boyfriend and father of her children. New Haven Police Officer Victor Herrera was dispatched to Ms. Bellonio's residence at approximately 6:30 p. m. Upon arriving, Officer Herrera found that Ms. Bellonio was quite upset. She stated to the officer that she had received a telephone call from the defendant requesting to see his children. Ms. Bellonio informed the defendant that she had gotten a temporary restraining order prohibiting him from contacting her. She then hung up on the Defendant. He called again and she hung up again.
Ms. Bellonio had obtained an ex-parte civil temporary restraining order because of a domestic incident which occurred between her and the defendant on June 10, 1998. The defendant was arrested, on June 10, by the New Haven Police as a result of this domestic incident and charged with breach of peace. This restraining order covered both Ms. Bellonio and her children and prohibited the defendant from contacting them, either in person or by the telephone. State's Exhibit 1. Such an order is effective on signing, subject to service on defendant, pending a further hearing on whether or not the order should be continued. Conn. Gen. Stat. § 46b-15. Officer Herrera testified that he was shown a copy of the order by Ms. Bellonio but did not know whether or not the order had been served on the defendant.[1]
Ms. Bellonio further told Officer Herrera that after she hung up on defendant the second time, the telephone rang several times thereafter but she did not answer the telephone. Officer Herrera checked Ms. Bellonio's caller ID Unit, which registered a telephone call at approximately 6:30 p. m. Officer Herrera called the number and determined that the call came from the Atlantic Motel, in New Haven.
Officer Herrera then went to the Atlantic Motel to investigate further, where he was met by Officer Santiago. The front desk clerk told the officers that a Daniel Schofield was registered at the hotel in Room 141. Daniel Schofield is defendant's brother. He testified that he rented the room for two days, June 10 and 11, 1998, so that his brother Scott would have a place to stay. Daniel Schofield stated he invited his brother to stay with him at the motel.
CT Page 12086 Both officers then went to Room 141 and knocked on the door. Through the closed door, they identified themselves as police officers and stated they wished to speak to "your brother", believing that the person on the other side of the door was Daniel. Defendant opened the door and the police again stated they wanted to speak to "your brother", not knowing they were speaking to the defendant. Officer Herrera indicated they wanted to enter the room and defendant stepped back and aside, allowing them to enter the room. Officer Herrera testified they advised the defendant that they were looking for Scott Schofield and he identified himself as Scott.
Once inside the hotel room, the officers noticed there were a large number of hunting and other knives scattered all over the room as well as a large number of empty ziploc bags of the type generally used to store narcotics. One of the larger knives was on the nightstand. As Officer Santiago went to take possession of that knife, defendant warned him that there was a large albino python snake was under the bed. Officer Herrera also noticed there were some personal belonging in the hotel room as well. None of these items were seized by the police.
The Officers inquired about the telephone calls made to Ms. Bellonio, and defendant admitted making those calls. Officer Herrera then informed defendant he was under arrest and took hold of his wrists. Officer Santiago told the defendant that he was going to pat him down for officer safety and inquired whether the defendant had any sharp weapons or narcotics on his person. Defendant acknowledged that he had narcotics in his back pants pocket. Officer Santiago then patted down the defendant and found a crack pipe, two round rock like balls, which was later found to be crack cocaine, and $81 in cash. Defendant was then handcuffed by the officers.
Defendant was charged with violation of a protective order, in violation of Connecticut General Statutes § 53a-110b, possession of narcotics and use of drug paraphernalia. The last two charges are as a result of the items seized from him in a pat-down search after he was placed under arrest.
According to the testimony, the police did not obtain a search warrant to search the hotel room nor did they obtain an arrest warrant to arrest the defendant. Defendant claims the arrest was unlawful, and therefore, the items seized in the search incident to that arrest should be suppressed.
CT Page 12087 Although defendant's Motion to Suppress on its face raises many issues, defendant has only pursued his claim that his warrantless arrest inside his temporary home was unlawful, making evidence seized from his person in the search incident to that arrest inadmissible and in violation of his United States and Connecticut constitutional rights.
The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
The Fourth Amendment to the United States Constitution is applied to the States through the Fourteenth Amendment. In addition to the United States Constitution, Article First, Section 7, of the Connecticut Constitution provides:
 The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation.
According to the evidence presented at the hearing, the Defendant was arrested on charges of violation of a protective order, in addition to the narcotics charges that arose out of the search conducted because of the arrest. The state concedes that the arrest of the Defendant was made without an arrest warrant. The Defendant contends however, that the police needed to obtain a warrant prior to arresting him on misdemeanor charges in his home. This contention is not supported by the law.
In Connecticut, peace officers, which includes municipal police officers, see, Conn. Gen. Stat. § 53a-3(9), "in their respective precincts, shall arrest, without previous warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on the speedy information of others." Conn. Gen. Stat. § 54-1f. The Connecticut Supreme Court has held that `speedy information of others' means information that was received and acted upon promptly after the commission of CT Page 12088 the offenses charged in the information. Sims v. Smith,115 Conn. 279, (1932). In one case, a court held that an arrest within a hour from when the information was received, was considered speedy for the purposes of the statute. State v. Barles,25 Conn. Sup. 103 (1964). An arrest several hours after the incident, however, is not considered on "speedy information." Champagne v.Gintiuk, 871 F. Sup. 1527 (D.Conn. 1994).
Here, the New Haven Police Department received a telephone call from Ms. Bellonio at approximately 6:30 p. m. Ms. Bellonio indicated that she was receiving harassing telephone calls from the defendant, a person against whom she had obtained a temporary restraining order. After taking her complaint, Officer Herrera testified that he then proceeded directly to the Atlantic Motel where he met up with Officer Santiago. After speaking with the desk clerk, both officers went to speak to defendant and based upon this conversation, placed him under arrest. The evidence in this case supports the fact that defendant was placed under arrest within a very short period of time from when the police first received the information and accordingly, falls within the "speedy information" provision of their power to arrest.
In addition to the speedy information requirement for a warrantless arrest, the Connecticut Supreme Court has stated that a warrantless misdemeanor arrest must also be supported by probable cause. State v. Santiago, 224 Conn. 494, 498 (1993). The Connecticut courts have established that probable cause to arrest a defendant exists if (1) there is probable cause to believe a crime has been committed; and (2) there is probable cause to believe the person arrested committed the crime. State v.Williams, 205 Conn. 456 (1987); State v. Gasparro, 194 Conn. 96,105 (1984). The Connecticut Supreme Court in Gasparro, states that "probable cause is a fluid concept" which turns on the probabilities of factual and practical considerations on which reasonable and prudent men act and must be made from the "totality of the circumstances." State v. Gasparro,194 Conn. at 105, 106.
Based on the totality of the circumstances here, there was probable cause for an arrest of this defendant. On June 10, 1998, defendant was charged with breach of peace for an alleged domestic incident involving Ms. Bellonio. Ms. Bellonio was scared enough of the defendant that she sought a no-contact temporary restraining order against defendant the same day. The next day, Ms. Bellonio received at least two telephone calls from defendant. In the first call, Ms. Bellonio advised the defendant CT Page 12089 of the no contact order. Yet defendant called Ms. Bellonio again, in violation of that order and her request for no further contact. The police determined the calls came from the Atlantic Motel, where defendant was staying. At the motel, the defendant acknowledged that he made the calls to Ms. Bellonio. Based on these facts, the police had probable cause to believe a crime was committed and probable cause that the crime was committed by defendant.
The state concedes that the New Haven Police erroneously charged the defendant with violation of a protective order, when in fact he should have been charged with telephone harassment under Conn. Gen. Stat. § 53a-183. The officers confused the civil restraining order with a criminal protective order. At the time of his second arrest on June 11, defendant had not yet gone to court on his June 10 arrest, so no criminal protective order was in effect.
This does not mean however, that there was no probable cause to arrest the defendant on June 11, 1999. Connecticut courts have held that even though a police officer cites the wrong statutory section, this fact does not negate the existence of probable cause to arrest. State v. One 1993 Black Kenworth Truck,41 Conn. App. 779 (1996). Prosecutors are free to file a substitute information where an error or defect exists in the summons provided that the substantive rights of the defendant are not prejudiced. Id. The Appellate Court in citing to United States v.Story, 463 F.2d 326, 328-29, (8th Cir. 1972) stated that the arrest in not invalidated, where an officer did not name the proper offense, as long as there was probable cause for an arrest on the correct charge.
Here, the officers had sufficient information to believe that the defendant, with knowledge of an order prohibiting him from calling Ms. Bellonio, did so anyway. Based upon the facts in evidence, the Court finds probable cause existed to support a charge of harassment in the second degree, in violation of Conn. Gen. Stat. § 53a-183(a). The statute states that "a person is guilty of harassment in the second degree when: (3) with the intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm. Court. Gen. Stat. §53a-183(a)(3). The evidence supports a finding of probable cause charging the defendant with this offense because the defendant was making calls which he knew or should have known he was prohibited from doing. These calls caused Ms. Bellonio enough CT Page 12090 annoyance and alarm that she called the police.
The court rejects defendant's contention that the complainant could not have been in danger and that defendant would not have hurt the complainant. This is irrelevant to the charge of telephone harassment and the evidence indicates the contrary. The Defendant was arrested on the prior day and charged with breach of peace for an domestic incident where Ms. Bellonio was the victim. Ms. Bellonio established a sufficient factual basis for threat of imminent harm to obtain a no-contact temporary retraining order against the defendant.
The court also rejects defendant's contention that the telephone calls were not threatening or offending to the complainant. The record indicates that Ms. Bellonio received at least two of telephone calls from defendant, however, she apparently was concerned enough to call the police. Under the circumstances of the case, the act of making the telephone calls is the prohibited conduct, not the content.
Finally, defendant argues that even where there is probable cause to arrest a suspect on speedy information of others, theFourth Amendment prohibits the police from making warrantless entry into a suspect's home to make a routine misdemeanor arrest.State v. Santiago, 224 Conn. 494, 498-499 (1993) (citing State v.Brosnan, 221 Conn. 788, 795 (1992); Payton v. New York,445 U.S. 573 (1980)). In Payton however, the United States Supreme Court indicated that a person can give his consent for the police to enter his or her home and thereby make an arrest without a warrant. Payton vs. New York, 445 U.S. at 587. The court concludes such consent was given and thereby the warrantless arrest of defendant was reasonable.
First, the Atlantic Motel was this defendant's home, although temporary. The courts consider a person's home to be any place where he is staying, whether as an owner or a tenant of the dwelling, State vs. Hill, 237 Conn. 81 (1996) (citing Rakas439 U.S. at 142; State vs. Brown, 198 Conn. 348, 503 A.2d 566 (1986)) or as an overnight guest. State v. Hill, 237 Conn. at 93;Minnesota vs. Olson, 495 U.S. 91, 98 (1990). This also includes stays in a hotel or motel. State v. Benton, 206 Conn. 90,536 A.2d 572 (1988); United States vs. Mankani, 738 F.2d 538, 544 (2d Cir. 1984).
Second, in looking at the totality of the circumstances, the evidence in the case at bar and the inferences which can be drawn CT Page 12091 from it, the court concludes that defendant consented to have the police enter his motel room and such consent was valid. For a defendant to consent to make a warrantless search reasonable, the consent must be freely given, U.S. Const, Amd. 4; Conn. Const. Art 1, § 7; State v. Jones, 193 Conn. 70 (1984); State v. Fields,31 Conn. App. 312, 324, cert. denied, 226 Conn. 916 (1983) and such consent must be more than mere acquiescence to police authority, State v. Fields, 31 Conn. App. at 325 (citing State v.Jones, 193 Conn. 70, 79, 475 A.2d 1087 (1984)). The voluntariness [of consent] cannot only be found in the words of the defendant's but also in his or her acts or conduct. Poulos v. Pfizer, Inc.,244 Conn. 598 (1993). Here, the police asked defendant to enter the motel room and he opened the door further and backed away, allowing the officers to enter the room. The defendant did this freely and voluntarily.
Defendant contends however, that he must know the purpose of the police inquiry for consent to be valid. This is incorrect and not supported by the law. The case law states the only requirements for valid consent are that it must be freely and voluntarily given. Next, defendant's contention that consent must be verbal consent also is not supported by the law. The Connecticut Supreme Court held in Poulos that voluntariness can be found not only from a defendant's words, but also his acts or conduct. Poulos v. Pfizer, Inc., 244 Conn. 598 (1993). Here, the officers testified that when defendant opened the door and they asked if they could enter the room, defendant backed up and moved to the side as if he was opening a pathway into the room for the officers. Once the officers were making their way into the room, the defendant never prevented their entry, he never said not to enter nor did he ask them to leave. This evidence is sufficient for the state to meet its burden in proving the consent was freely given. In fact, the court finds the defendant was very cooperative with the police throughout this incident.
The court also rejects defendant's final contention that consent, if given to a warrantless entry, is limited and can be retrieved at anytime. Defendant has cited no law to support this contention. The Court finds, however, that even assuming defendant's contention is correct, defendant did have time to withdraw his consent and such consent was never withdrawn.
Accordingly, the court concludes that while the officers did not have a warrant to make an arrest, defendant consented to their entry into his motel room and therefore, defendant waived his Fourth Amendment protections and Santiago is not applicable CT Page 12092 here.
Because the Court has concluded the defendant consented to the police entry and made a valid warrantless arrest, the only remaining issue is whether the search of defendant's person was a lawful search.
Generally, most searches and seizures without warrant are considered unreasonable; however, there are a few exceptions to this rule. One exception is a search incident to a lawful arrest.State v. Lewis, 220 Conn. 602 (1991). This exception allows the complete search of a suspect at the time of the arrest. Id.
(citing New York v. Belton, 453 U.S. 454 (1981); State v. Velez,215 Conn. 667, 672 (1990). The police have the right to seize any item of evidence on a defendant's person or within the area of his control, State v. Guertin, 190 Conn. 440, (1983), and can check for weapons or for evidence of a crime. State v. Dukes,209 Conn. 98 (1988).
Here, the defendant was lawfully placed under arrest and as such, the officers were allowed to conduct a search for weapons and other evidence. As a result of this search, the defendant was found to be in possession of a crack pipe and crack cocaine. The police charged the defendant with possession of narcotics and use of drug paraphernalia. This evidence was lawfully seized.
Based on the foregoing, the Court hereby determines that the defendant was lawfully arrested without a warrant, there was probable cause for that arrest and the police conducted a lawful search incident to that arrest. Therefore, the Court denies defendant's Motion to Suppress.
So Ordered,
Karen Nash Sequino Superior Court Judge